UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KRAUS USA, INC.,

Plaintiff,

- against -

SERGIO MAGARIK a/k/a SERGEI MAGARIK,
VONN, LLC a/k/a VONN LIGHTING, LLC d/b/a
VONN LIGHTING, LEONID VALDBERG, VIGO
INDUSTRIES, LLC, and NIGEL CHALLENGER,

Defendants.

---

SERGIO MAGARIK (both individually and
derivatively on behalf of KRAUS USA, INC.),

Counterclaimant and
Third-Party Plaintiff,

- against -

KRAUS USA, INC.,

Counterclaim-Defendant,

and

RUSSELL LEVI, MICHAEL RUKHLIN, DAN
LUSBY, KRAUS CHINA, and ENPOWER, LLC,

Third-Party Defendants.

---

**OPINION AND ORDER**

17 Civ. 6541 (ER)

Ramos, D.J.:

Kraus USA, Inc. ("Kraus") brings this action against Sergio Magarik, Vonn, LLC,

Leonid Valdberg, Vigo Industries, LLC ("Vigo"), and Nigel Challenger (collectively,

"Defendants"), arising from the alleged usurpation of an opportunity to expand Kraus's product

lines into the lighting business. Magarik has filed a counterclaim against Kraus and third-party

complaint against Russell Levi, Michael Rukhlin, Dan Lusby, Kraus China, and Enpower, LLC (collectively, "Third-Party Defendants"). Vigo has sought leave to also file a counterclaim against Kraus and third-party complaint against Todd Alexander. Pending before the Court are (1) Defendants' motion to dismiss Kraus's complaint, (2) Kraus and Third-Party Defendants' cross-motion to dismiss and strike Magarik's counterclaim and third-party complaint, and (3) Vigo's motion for leave to amend to file a counterclaim and third-party complaint. For the reasons set forth below, Defendants' motion to dismiss is DENIED, Kraus and Third-Party Defendants' cross-motion to dismiss and strike is DENIED IN PART and GRANTED IN PART, and Vigo's motion for leave to amend is DENIED IN PART and GRANTED IN PART.

## I.     Factual and Procedural Background

The following facts, set forth separately below, are drawn from (1) Kraus's complaint, (2) Magarik's counterclaim and third-party complaint, and (3) Vigo's proposed counterclaim and third-party complaint. They are assumed true for purposes of deciding the pending motions. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) (motion to dismiss for failure to state a claim); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (motion to dismiss for lack of subject-matter jurisdiction); *Arnold v. Research Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 284 (E.D.N.Y. 2016) (motion to amend). In addition, "[i]n adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 181 n.11 (E.D.N.Y. 2012). Also, the Court may "take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

## A.     Kraus's Complaint

Kraus is a designer, manufacturer, and wholesaler of kitchen and bathroom plumbing fixtures.  Compl. ¶ 1, Doc. 1.[1]  Sergio Magarik was an employee, officer, director, and "founding partner" of Kraus.  *Id.* ¶ 21–22.

Beginning in 2013, Kraus considered expanding into lighting through Build.com, an online retailer of Kraus's sinks and faucets that had successfully sold other brands' lighting products.  *Id.* ¶¶ 23, 25, 27.  Zak Kearns, a Build.com brand manager, encouraged Kraus to pursue this expansion, reasoning that "lighting is a 100M business for [Build.com]," "[Kraus has] more brand recognition than 90% of lighting manufacturers," and lighting "[is] easily cross-sold on [Kraus] bath products."  *Id.* ¶¶ 28–30 (alterations in original).

In March 2014, Kraus was still exploring and developing plans for the Build.com lighting opportunity, which it also referred to as Kraus Lighting.  *Id.* ¶ 32.  Kraus was considering forming a new company to pursue the Build.com lighting opportunity, or alternatively, engaging in a joint venture with the New Lighting Company ("NLCO") for "a somewhat different lighting opportunity" focused on commercial lighting products.  *Id.* ¶ 33.  In a March 2014 email, Kraus employees discussed both options of forming a new company to start a brand or distributing under the NLCO brand.  *Id.*, Ex. C.

However, Kraus decided to place the Build.com lighting project on hold primarily on the advice of Magarik.  *Id.* ¶ 34.  Magarik downplayed the potential benefit of expanding into lighting and advised that doing so would require a significant amount of time, capital, and personnel that would detract from and jeopardize Kraus's growth in its primary market, i.e., residential sinks and faucets.  *Id.* ¶¶ 34–36.  Russell Levi, another Kraus founder, urged

---

[1] Citations to "Doc." refer to documents filed in this action unless otherwise indicated.

considering the narrower NLCO opportunity focused on commercial lighting, but Magarik declined to participate in the venture.  *Id.* ¶ 37.

Kraus alleges that Magarik's advice was influenced by his personal interest in usurping the Build.com lighting opportunity for himself.  *Id.* ¶ 38.  Unbeknownst to Kraus, in late 2014 or early 2015, Magarik contacted Kearns at Build.com and informed him of this personal interest.  *Id.* ¶ 40.  Magarik "secretly hired Kearns as a private consultant" to provide advice on lighting products, marketing strategies, suppliers, distributors, and retailers.  *Id.* ¶ 43.  Magarik also drew on customer and vendor relationships developed at Kraus to further the project.  *Id.* ¶ 46.  Around this time, Magarik started Vonn, LLC to pursue this opportunity, registering the domain name www.vonnlighting.com in September 2014 and incorporating Vonn in February 2015.  *Id.* ¶¶ 48–49, 51.  Magarik did not inform Kraus, where he remained employed, that he had formed Vonn.  *Id.* ¶¶ 50, 53–54.

Magarik also reached out to Leonid Valdberg, Kraus's "chief nemesis" and the owner of Vigo, which is a competitor of Kraus that has allegedly copied Kraus's sinks and faucets for years.  *Id.* ¶¶ 58–62, 101.  Magarik sought to encourage Valdberg to invest in Vonn.  *Id.* ¶¶ 58–59.  To entice him, Magarik allegedly gave Valdberg and Vigo access to Kraus's technical product specifications, upcoming product designs, sales and e-commerce data, and other trade secrets.  *Id.* ¶ 67.  Valdberg and Vigo agreed to invest, and through their participation in Vonn, they also gained access to Kraus's customer lists, vendor relationships, internal costs and operating expenses, e-commerce know-how, and other trade secrets.  *Id.* ¶¶ 68, 70.  This information assisted Magarik and Valdberg in developing and launching Vonn.  *Id.* ¶ 4.

After forming Vonn, Magarik allegedly performed little work for Kraus, and instead focused on building Vonn by establishing relationships and accounts at major retail outlets

through Kraus's contacts. *Id.* ¶¶ 71–73. In addition, Magarik leased a workspace, hired employees, established distribution channels, and conducted other Vonn business. *Id.* ¶ 79.

On September 10, 2015, a Kraus representative confronted Magarik with evidence that he had formed a new enterprise with Valdberg. *Id.* ¶ 81. That same day, Magarik was terminated from his position at Kraus. *Id.* ¶ 83. On September 21, 2015, Magarik filed a lawsuit against Kraus in state court in Nassau County, New York, to seek the dissolution of the company on the grounds of alleged malfeasance by other shareholders, including mismanagement and misappropriation of a separate entity, Kraus China (the "Nassau County Action"). *Id.* ¶ 57; *see Magarik v. Kraus USA, Inc.*, Index No. 606128/2015 (N.Y. Sup. Ct. Nassau Cty.), Doc. 1.

Nigel Challenger was a long-time Kraus employee involved in product development and customer service, and he was subject to a confidentiality agreement that required him to hold certain information in strict confidence during and after his employment with Kraus. Compl. ¶¶ 89–91. On the night of April 27, 2017, Challenger remotely accessed Kraus's computer system and downloaded proprietary information regarding customers, vendors, sales, and pricing, and then deleted records of his access history. *Id.* ¶¶ 96–97. Four days later, on May 1, 2017, Challenger unexpectedly resigned from Kraus, and was hired by Magarik to work at Vonn. *Id.* ¶¶ 89, 98.

### B. Magarik's Counterclaim and Third-Party Complaint

Kraus was formed in 2007 and is owned by its three founders: Russell Levi, Michael Rukhlin, and Magarik. Magarik's Countercl. & Third-Party Compl. ¶¶ 13–16, Doc. 29. Levi owns 51% of Kraus shares, Rukhlin owns 25%, and Magarik owns 24%. *Id.* ¶¶ 14–16. When Kraus was formed, the three founders orally entered into a shareholders agreement, pursuant to which Magarik made a $100,000 investment (and also a $100,000 loan that was later repaid). *Id.* ¶¶ 17–18. Under the agreement, Magarik was given a seat on Kraus's board of directors,

employment, and control over sales and marketing operations. *Id.* ¶ 19. The agreement gave

Rukhlin responsibility for business operations and Levi responsibility for production. *Id.* ¶ 20.

Despite this, from 2007 to 2011, Magarik managed almost all aspects of Kraus because Levi and

Rukhlin allegedly did not carry out their assigned responsibilities. *Id.* ¶ 21.

In 2011, however, Levi and Rukhlin allegedly took over all operations and management

of Kraus and even interfered with Magarik's assigned sales and marketing duties, to the

significant detriment of the company. *Id.* ¶¶ 23, 26. Levi, as the controlling shareholder,

allegedly hired numerous unqualified employees, including Rukhlin's family members, a

disbarred attorney and convicted felon, and Dan Lusby, who became Kraus's chief financial

officer. *Id.* ¶¶ 25, 27–29. In 2014, Levi ceased print advertising and sales to showrooms, and

did not permit sales to new customers until they could be "further evaluated." *Id.* ¶ 32. Levi also

ordered far more inventory than Kraus could sell, requiring Kraus to rent a warehouse for unsold

inventory until it could be "dump[ed]" at a loss. *Id.* ¶ 33. In addition, with Lusby's assistance,

Levi created a bonus plan and increased salaries and bonuses. *Id.* ¶ 34. From 2012 to 2014,

Kraus's operating expenses and debt skyrocketed, while sales rose to a lesser degree, resulting in

dramatically decreased margins. *Id.* ¶ 31. Magarik objected to what he perceived to be Kraus's

mismanagement, resulting in numerous verbal altercations with Levi. *Id.* ¶¶ 38–39.

After Levi and Rukhlin took control of Kraus, they allegedly used Kraus funds, assets,

and staff to operate unrelated businesses and purloin other personal benefits. *Id.* ¶¶ 40–41. For

instance, Levi and Rukhlin used Kraus resources to offset losses at and prop up

Expressdecor.com, a business they operate together. *Id.* ¶ 42–44. Levi also used a Kraus

corporate credit card for personal expenses. *Id.* ¶ 47. Lusby, as chief financial officer,

acquiesced to such misappropriations. *Id.* ¶¶ 29, 48.

In August 2014, Levi formed Enpower, LLC to pursue an opportunity to distribute lighting fixtures under the NLCO brand, and he allegedly used Kraus finances, staff, assets, and warehouse space for Enpower. *Id.* ¶¶ 2, 45–46, 112–113. Despite using Kraus resources, Levi did not inform the board of directors of the opportunity with NLCO,[2] and instead vetoed Kraus's expansion into lighting so he could usurp the NLCO opportunity for himself. *Id.* ¶¶ 2, 109–113.

Levi and Rukhlin also formed Kraus China to gain access to Asian suppliers, and they allegedly used Kraus funds, inventory, facilities, and staff to build Kraus China, even though it is a separate entity from Kraus and owned by Levi or Rukhlin. *Id.* ¶¶ 49–56. Magarik was excluded from ownership or management. *Id.* ¶¶ 50, 59. Levi also allegedly offered product suppliers ownership stakes in Kraus China in exchange for control over the suppliers, and caused Kraus to pay the suppliers artificially high prices, the proceeds of which flowed to Kraus China and Levi. *Id.* ¶¶ 57–58. In August 2015, after Magarik repeatedly objected to the use of Kraus resources to fund Kraus China, Levi offered Magarik the opportunity to invest in Kraus China on onerous terms, providing for a 24% stake that could be diluted to 12% with no voting rights, which Magarik rejected. *Id.* ¶¶ 60–62.

In July 2015, Kraus took out a $10 million loan from Bank Hapoalim B.M., $2 million of which was personally guaranteed by Magarik. *Id.* ¶¶ 64, 68. Although Levi, Rukhlin, and Lusby told Magarik and Bank Hapoalim that the loan would fund the expansion of Kraus's product lines, Levi allegedly used it to fund Kraus China and other side ventures, among other things. *Id.*

---

[2] Although this allegation is presumed true for purposes of the instant motion, the Court notes that it appears to be contradicted by allegations and an exhibit in Kraus's complaint. *See* Compl. ¶ 37 ("When . . . Levi . . . pressed the parties to consider, at a minimum, pursuing the much more narrow NLCO opportunity focusing on commercial lighting fixtures and panels, Defendant Magarik declined participation."); *id.*, Ex. C (email from Rukhlin to Levi, copying Magarik, discussing the NLCO opportunity).

¶¶ 65–66, 68. When Bank Hapoalim discovered that Kraus's debt-to-income ratio had fallen below contractual requirements, the bank demanded that Kraus receive additional funding through a $250,000 loan from Levi, Rukhlin, and Magarik and repay other debt. *Id.* ¶¶ 70–72. Levi and Rukhlin demanded that Magarik contribute proportionately to the $250,000 loan, but Magarik refused. *Id.* ¶¶ 73–74. Levi and Rukhlin then threatened to withhold Magarik's distributions until his share was satisfied and to treat the money as an investment and not a loan, which Magarik also refused to agree to. *Id.* ¶¶ 74–75.

In September 2015, Levi and Rukhlin told Magarik orally and in writing that his employment with Kraus was terminated. *Id.* ¶¶ 77, 79. Levi and Rukhlin then called a special meeting of shareholders to address whether to remove Magarik as a director of Kraus. *Id.* ¶ 81. On September 21, 2015, the day of the scheduled meeting, Magarik filed the Nassau County Action against Kraus, Levi, and Rukhlin. *Id.* ¶¶ 82–83.

Magarik alleges that the reason Kraus failed to enter the lighting market is because it choose not to do so as it did not have sufficient funds due to Levi and Rukhlin's mismanagement and misappropriation, and because Levi usurped the NLCO lighting opportunity through Enpower. *Id.* ¶ 2.

## C.     Vigo's Proposed Counterclaim and Third-Party Complaint

Vigo is a designer, manufacturer, and seller of kitchen and bathroom fixtures and accessories. Vigo's Countercl. & Third-Party Compl. ¶ 7, Doc. 55, Ex. G. Todd Alexander is a former employee and vice-president of Vigo, where his responsibilities included purchase ordering, quality control, manufacturing, and pricing and often involved working in China with Vigo's manufacturing partners. *Id.* ¶¶ 15–17. Alexander was subject to a non-disclosure agreement that required him to keep confidential all information provided to him by Vigo, other

than publicly available information or common knowledge, during and after his employment. *Id.* ¶¶ 36, 38.

In June 2016, while working for Vigo, Alexander and Howard Zhang, another Vigo employee, allegedly formed a competing kitchen and bath fixture business called Aquavii. *Id.* ¶¶ 21, 27. Alexander and Zhang allegedly misappropriated resources related to Vigo's trademarked "Matte Stone" sinks for Aquavii, including by causing Vigo's manufacturing partners in China to produce Matte Stone sinks for Aquavii rather than Vigo. *Id.* ¶ 24. When Vigo learned of this in April 2017, Alexander was terminated as an employee. *Id.* ¶¶ 21, 34. In May 2017, Vigo sued Alexander and Aquavii for their alleged misdeeds in U.S. District Court for the District of New Jersey, and they quickly settled in August 2017. *Id.* ¶¶ 42–43; *see Vigo Industries, LLC v. Alexander*, No. 17 Civ. 03809 (D.N.J.).

In October 2017, Vigo learned that Kraus had hired Alexander. Vigo's Countercl. & Third-Party Compl. ¶ 48. That same month, Vigo learned that Alexander had visited three of its manufacturing partners in China that produce Vigo's faucets, Matte Stone sinks, and shower doors. *Id.* ¶¶ 44, 47, 57. Vigo alleges that the purpose of the visits was to convince these manufacturers to produce Vigo's product lines for Kraus. *Id.* ¶ 44. To that end, Alexander allegedly disclosed to Kraus "all of Vigo's proprietary and confidential manufacturing partners that are not known to the public or the kitchen and bath industries, and who are extremely difficult to locate," as well as "all of Vigo's proprietary and confidential processes, knowhow and means and methods used in the manufacture and design of Vigo's plated faucets, shower doors and Matte Stone[] sinks," which took Vigo over two years to develop. *Id.* ¶¶ 50–51, 55. Vigo alleges that these manufacturers are in a strategic location conducive to efficient transportation of the finished products, its faucet manufacturer is one of only a few facilities

authorized by the Chinese government to conduct the plating process due to environmental and health regulations, and its Matte Stone manufacturer is the only plant in China capable of producing sinks out of the Matte Stone materials. *Id.* ¶¶ 65, 75, 83. Kraus does not currently carry faucets that are plated, sinks made of the materials in Matte Stone sinks, or any shower doors. *Id.* ¶¶ 58, 67, 77.

### D. Procedural History

The litigation history between the parties begins with the Nassau County Action on September 21, 2015, when Magarik, individually and derivatively on behalf of Kraus, sued Kraus, Rukhlin, and Levi for judicial dissolution of Kraus under N.Y. Bus. Corp. Law § 1104-a, breach of fiduciary duty, breach of contract, conversion, fraud, and declaratory judgment. *Magarik v. Kraus USA, Inc.*, Index No. 606128/2015 (N.Y. Sup. Ct. Nassau Cty.), Doc. 1. On April 20, 2016, Kraus, Rukhlin, and Levi answered and filed a counterclaim for breach of fiduciary duty. *Id.*, Doc. 137. On May 3, 2016, Levi and Rukhlin, as the other shareholders of Kraus, elected to purchase Magarik's shares at their fair value pursuant to N.Y. Bus. Corp. Law § 1118. *Id.*, Doc. 138. On December 13, 2017, Kraus, Rukhlin, and Levi withdrew their counterclaim in the Nassau County Action, *id.*, Doc. 233, and on July 26, 2018, Magarik withdrew all claims except for dissolution, *id.*, Doc. 246.

On May 30, 2017, Vigo sued Alexander and Aquavii in the District of New Jersey, asserting claims for misappropriation of trade secrets, breach of fiduciary duty, breach of contract, tortious interference with contract, conversion, fraud, conspiracy, unjust enrichment, and constructive trust. *Vigo Industries, LLC v. Alexander*, No. 17 Civ. 03809 (D.N.J.), Doc. 1. Following a settlement finalized on August 22, 2017, the case was dismissed on September 6, 2017. *Id.*, Doc. 13; Vigo's Countercl. & Third-Party Compl. ¶ 43.

On August 28, 2017, Kraus filed the instant action against Magarik, Vonn, Valdberg, Vigo, and Challenger, asserting claims for violations of the Defend Trade Secrets Act ("DTSA") and Computer Fraud and Abuse Act ("CFAA"), misappropriation of trade secrets, breach of fiduciary duty, breach of contract, tortious interference with contract, conversion, fraud, aiding and abetting, conspiracy, unfair competition, deceptive trade practices, unjust enrichment, constructive trust, accounting, and declaratory judgment. Doc. 1.

On September 19, 2017, Defendants answered in this action. Doc 21. On September 21, 2017, Magarik, both individually and derivatively on behalf of Kraus, filed a counterclaim against Kraus and third-party complaint against Levi, Rukhlin, Lusby, Kraus China, and Enpower, asserting claims for breach of fiduciary duties, breach of contract, conversion, fraud, alter ego, aiding and abetting, conspiracy, unfair competition, unjust enrichment, constructive trust, accounting, and declaratory judgment. Doc. 29.

On January 5, 2018, Vigo moved for leave to amend to add a counterclaim against Kraus and third-party complaint against Alexander, asserting claims for violation of the DTSA, misappropriation of trade secrets, breach of fiduciary duty, breach of contract, tortious interference with contract, aiding and abetting, conspiracy, unjust enrichment, constructive trust, and accounting. Doc. 55.

Also on January 5, 2018, Defendants moved to dismiss Kraus's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Doc. 54. On February 9, 2018, Kraus cross-moved to dismiss and strike Magarik's counterclaim and third-party complaint pursuant to Rules 12(b)(1), 12(b)(6), and 14(a). Doc. 65.

## II.    Kraus and Third-Party Defendants' Cross-Motion to Dismiss and Strike Magarik's Counterclaim and Third-Party Complaint[3]

Kraus and Third-Party Defendants have cross-moved to dismiss Magarik's claims,

asserted in a counterclaim against Kraus and third-party complaint against Third-Party

Defendants, for lack of subject-matter jurisdiction under Rule 12(b)(1).  Third-Party Defendants

have also cross-moved to strike Magarik's third-party complaint under Rule 14(a).[4]  The Court

addresses each argument in turn.

### A.    Cross-Motion to Dismiss Magarik's Claims for Lack of Subject-Matter Jurisdiction

#### i.    Supplemental Jurisdiction

Kraus and Third-Party Defendants argue that the Court does not have subject-matter

jurisdiction over Magarik's claims because it lacks supplemental jurisdiction over them.  Pl.'s &

Third-Party Defs.' Mem. Supp. Cross-Mot. Dismiss & Strike Countercl. & Third-Party Compl.

8–9, Doc. 65-1.  Where a court has original jurisdiction over a federal claim, the court has

"supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of

the United States Constitution."  28 U.S.C. § 1367(a).  Magarik asserts supplemental jurisdiction

---

[3] As will be explained below, because Defendants' motion to dismiss requires determining which pleadings are operative, the Court first will address Kraus and Third-Party Defendants' cross-motion to dismiss and strike and Vigo's motion for leave to amend, and then will address Defendants' motion to dismiss.

[4] Certain Third-Party Defendants also argue that Magarik fails to state a claim against them as individuals under Rule 12(b)(6).  Pl.'s & Third-Party Defs.' Mem. Supp. Cross-Mot. Dismiss & Strike Countercl. & Third-Party Compl. 13–15, Doc. 65-1.  Because the Court strikes Magarik's third-party complaint under Rule 14(a), as will be explained, the Court need not address whether his third-party complaint also fails to state a claim against Levi, Rukhlin, and Lusby individually.  Nonetheless, the Court notes that their argument that there are insufficient facts tied to them specifically is belied by Magarik's numerous allegations pertaining to Levi and Rukhlin's management of Kraus as controlling shareholders and Lusby's oversight and participation as chief financial officer.

over his state claims based on the Court's original jurisdiction over Kraus's federal DTSA and CFAA claims. Magarik's Countercl. & Third-Party Compl. ¶ 4.

To support supplemental jurisdiction, "the federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).[5]

Here, Kraus asserts federal claims for the theft of trade secrets and hacking of computer systems in furtherance of a continuing scheme by Defendants to misappropriate Kraus's trade secrets, including those pertaining to the usurped lighting opportunity with Build.com. Compl. ¶¶ 4, 67–68, 96, 104, 111. Magarik's state claims allege mismanagement by Kraus officers and the usurpation of an opportunity to distribute NLCO lighting products, and Magarik further alleges that among the reasons that Kraus failed to enter the lighting market are that very mismanagement and usurpation of the NLCO opportunity. Magarik's Countercl. & Third-Party Compl. ¶¶ 2, 30, 41, 45. Moreover, although Kraus considers the NLCO venture to be "a somewhat different lighting opportunity," the complaint and attached exhibits reveal that Kraus officers considered distributing NLCO products as among their options in pursuit of the Build.com lighting opportunity. Compl. ¶¶ 32–33 & Ex. C. Given this factual overlap between the Build.com opportunity and the NLCO venture, and Magarik's allegation that Kraus's failure to pursue lighting was due to Kraus officers' mismanagement and usurpation, Magarik's state

---

[5] The Second Circuit has noted that the question is "unsettled" as to "whether section 1367's expansion of supplemental jurisdiction to its constitutional limits renders the provision's scope broader than was contemplated in *Gibbs*." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 n.5 (2d Cir. 2004).

claims for those misdeeds arise from the same "common nucleus of operative fact" as Kraus's

federal claims.[6]  Accordingly, the Court has supplemental jurisdiction over Magarik's claims.[7]

### ii.    *Colorado River* **Abstention**

Kraus and Third-Party Defendants next argue that the Court should abstain from

exercising jurisdiction over Magarik's claims under *Colorado River Water Conservation District*

*v. United States*, 424 U.S. 800 (1976).  Pl.'s & Third-Party Defs.' Mem. Supp. Cross-Mot.

Dismiss & Strike Countercl. & Third-Party Compl. 9–12.  Under *Colorado River*, "a federal

court may abstain from exercising jurisdiction when parallel state-court litigation could result in

'comprehensive disposition of litigation' and abstention would conserve judicial resources."

*Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 100

---

[6] This case is distinguishable from *Goldman Marcus, Inc. v. Goldman*, No. 99 Civ. 11130 (KMW), 2000 WL 297169 (S.D.N.Y. Mar. 21, 2000), where the defendants allegedly infringed the plaintiff's copyrighted software in order to compete with the plaintiff after leaving the plaintiff's employment, and the defendants' counterclaims for mismanagement and fraud made no reference to their use or copying of the software and thus were not part of the same "case or controversy" for purposes of supplemental jurisdiction.  *Id.* at *4.  In contrast, Magarik specifically alleges that mismanagement and usurpation of the NLCO opportunity were among the reasons for Kraus's failure to enter the lighting market for which it now seeks redress.  Magarik's Countercl. & Third-Party Compl. ¶ 2.

[7] In a footnote, Kraus and Third-Party Defendants urge the Court to decline to exercise supplemental jurisdiction pursuant to § 1367(c), which permits courts to do so where, among other things, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).  Kraus and Third-Party Defendants argue that Magarik's state claims predominate because they affect eight people while Kraus's federal claims affect only two people.  Pl.'s & Third-Party Defs.' Mem. Supp. Cross-Mot. Dismiss & Strike Countercl. & Third-Party Compl. 9 n.6.  As an initial matter, that tally is incorrect:  Magarik's state claims involve *seven* parties (Magarik against Kraus, Levi, Rukhlin, Lusby, Kraus China, and Enpower), and Kraus's federal claims involve *six* parties (Kraus against Magarik, Vonn, Valdberg, Vigo, and Challenger).  More importantly, this slight disparity in the number of affected parties does not cause Magarik's claims to predominate.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 246 (2d Cir. 2011) ("[T]he fact that there are more class members in the state law class action than those in the [federal] collective action 'should not lead a court to the conclusion that a state claim "substantially predominates" over the [federal] action, as section 1367(c) uses that phrase.'" (quoting *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011))); *cf. Bu ex rel. Bu v. Benenson*, 181 F. Supp. 2d 247, 255 (S.D.N.Y. 2001) (holding that controversial state claims involving "hundreds of people" as well as city and state government predominated over federal claims related to only "a small number of parties").

(2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817–18).  Only "'exceptional'

circumstances, [and] the 'clearest of justifications,' . . . can suffice under *Colorado River* to

justify the surrender of . . . jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 25–26 (1983).

To abstain under *Colorado River*, there must be "parallel state-court litigation," and the

weighing of six factors must support abstention, "with the balance heavily weighted in favor of

the exercise of jurisdiction."  *Niagara Mohawk Power*, 673 F.3d at 100 (quoting *Moses H. Cone*,

460 U.S. at 16).  Those six factors are "(1) whether the controversy involves a res over which

one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient

than the other for the parties; (3) whether staying or dismissing the federal action will avoid

piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have

advanced more in one forum than in the other; (5) whether federal law provides the rule of

decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal

rights."  *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)

(citations omitted).

"Suits are parallel when substantially the same parties are contemporaneously litigating

substantially the same issue in another forum."  *Niagara Mohawk Power*, 673 F.3d at 100

(quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Abstention is not

appropriate where the proceedings involve different parties, subject matters, or forms of relief.

*Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.*, 17 F.3d 46, 50 (2d Cir. 1994).  To be parallel, the state

court proceeding must be able to "comprehensive[ly] dispos[e]" of the issues in the federal

proceeding.  *Niagara Mohawk Power*, 673 F.3d at 100.

Although there is some overlap between the issues, relief, and parties in Magarik's claims here and in the Nassau County Action, certain issues, relief, and parties are different. Both here and in the Nassau County Action, Magarik asserts claims for Kraus's and its officers' mismanagement, usurpation of corporate opportunities, breach of contract, and fraud, and he seeks damages as well as ownership of the usurped opportunities. However, here Magarik asserts claims for usurpation of both the Kraus China and Enpower opportunities; in contrast, the Nassau County Action involves only the Kraus China opportunity, as well as claims for the dissolution of Kraus and valuation of Magarik's shares. Moreover, in July 2016, the parties in the Nassau County Action filed a stipulation withdrawing all claims except the dissolution and valuation claim. Under these circumstances, the Court cannot conclude that the Nassau County Action will resolve the same issues and accord the same relief sought in this action. Additionally, here, Magarik has asserted claims against Kraus, Levi, Rukhlin, Lusby, Kraus China, and Enpower, but the latter three parties are not named in the Nassau County Action. Thus, a judgment in the Nassau County Action may not accord relief to Magarik with respect to those three parties.[8]

Accordingly, because the Nassau County Action involves different parties, subject matters, and relief, *Sheerbonnet*, 17 F.3d at 50, and will not "comprehensive[ly] dispos[e]" of the issues here, *Niagara Mohawk Power*, 673 F.3d at 100, *Colorado River* abstention is inappropriate.[9]

---

[8] This distinguishes this case from *Canaday v. Koch*, 608 F. Supp. 1460 (S.D.N.Y.), *aff'd sub nom. Cannady v. Valentin*, 768 F.2d 501 (2d Cir. 1985), where *Colorado River* abstention was appropriate notwithstanding the presence of different plaintiffs because the relief sought in the state action would benefit the plaintiffs in the federal action to the same degree. *Id.* at 1475.

[9] To be sure, Magarik's derivative claims on behalf of Kraus may be extinguished here if the court in the Nassau County Action orders the purchase of Magarik's shares under N.Y. Bus. Corp. Law § 1118. *See Bronzaft v. Caporali*, 616 N.Y.S.2d 863, 865 (Sup. Ct. N.Y. Cty. 1994) ("[New York's derivative action

## B.    Cross-Motion to Strike Magarik's Third-Party Complaint Under Rule 14(a)

Third-Party Defendants argue that Magarik's third-party complaint is improper and should be struck.  Pl.'s & Third-Party Defs.' Mem. Supp. Cross-Mot. Dismiss & Strike Countercl. & Third-Party Compl. 12–13; *see* Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim . . . .").  They point out that under Rule 14, a third-party plaintiff may only bring in a third-party defendant "who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  In other words, the third-party defendant's liability "must be contingent on the outcome of the main claim," which traditionally means liability for indemnification, contribution, or subrogation.  *839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 15 Civ. 4516 (SIL), 2016 WL 5372804, at *4 (E.D.N.Y. Sept. 26, 2016) (quoting *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 402 (E.D.N.Y. 2009)).  "[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim."  *Unilease Comput. Corp. v. Major Comput. Inc.*, 126 F.R.D. 490, 492 (S.D.N.Y. 1989) (alteration in original) (quoting *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967)).

Magarik has not alleged that Third-Party Defendants are or may be liable to him, in whole or in part, for the claims he faces.  Rather, Magarik asserts independent (albeit related) wrongs against them.  Accordingly, Magarik's third-party complaint against Third-Party Defendants is improper under Rule 14(a)(1) and must be struck.[10]

---

statute] has been interpreted as requiring . . . that the plaintiff maintain its shareholder status throughout the pendency of the action without interruption.  If the plaintiff's shares are disposed of during the pendency of the action, the action abates." (citations omitted)).  Nonetheless, given the significant differences in the Nassau County Action, the Court declines to stay those claims under *Colorado River*.

[10] Magarik contends that his third-party complaint is proper under Rule 14(a)(3), but this contention appears to be based on a misunderstanding of the rule.  Defs.' Reply Mem. Supp. Mot. Dismiss Compl. 15.  Rule 14(a)(3) provides that "[t]he plaintiff may assert against the third-party defendant any claim

Although Magarik's third-party complaint is improper under Rule 14(a)(1), neither party has addressed whether Third-Party Defendants may be joined to Magarik's counterclaim under Rule 13(h). *See* Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."); *see generally Trainum v. Rockwell Collins, Inc.*, No. 16 Civ. 7005 (JSR), 2017 WL 1093986, at *2–3 (S.D.N.Y. Mar. 9, 2017) (discussing joinder of parties and claims to a counterclaim under Rules 13, 18, and 20). Accordingly, Magarik will be granted leave to replead his claims against Third-Party Defendants in this manner.

### III.  Vigo's Motion for Leave to File Counterclaim and Third-Party Complaint

Vigo has sought leave to amend its pleading to add a counterclaim against Kraus and third-party complaint against Alexander. Rule 15 allows a party to amend its pleading with the other party's written consent or the Court's leave.[11] Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of Rule 15 embodies a "strong preference for resolving disputes on the merits." *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)). Motions to amend are ultimately within the discretion of the district court judge, who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d

---

arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(3). Rule 14(a)(3) applies to the *plaintiff* (i.e., Kraus). The applicable rule here is Rule 14(a)(1), which governs when a "*defending party* [i.e., Magarik] may, as *third-party plaintiff*," serve a third-party complaint. Fed. R. Civ. P. 14(a)(1) (emphasis added).

[11] Rule 15 governs amendment of a pleading to add a counterclaim. Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment. Rule 14 governs the filing of a third-party complaint and likewise permits a third-party plaintiff to do so with the Court's leave. Fed. R. Civ. P. 14(a)(1).

Cir. 2007).  The party opposing the motion to amend bears the burden of establishing that amendment would be futile, unduly prejudicial, or in bad faith.  *Usov v. Lazar*, No. 13 Civ. 818 (RWS), 2014 WL 4354691, at *8 (S.D.N.Y. Sept. 2, 2014).  Kraus opposes Vigo's proposed amendment on each of these three grounds, which the Court will address in turn.

## A.     Futility

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  To withstand a motion to dismiss, the counterclaim/third-party plaintiff must allege sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Because the Court evaluates the amendment "through the prism of a Rule 12(b)(6) analysis," the Court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006).  However, the Court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *Iqbal*, 556 U.S. at 678, 681, 686 (citing *Twombly*, 550 U.S. at 555).

Kraus argues that Vigo's claims are too speculative to survive a Rule 12(b)(6) motion. Pl.'s Mem. Opp'n Mot. Leave File Countercl. & Third-Party Compl. 19–21, Doc. 65-1.  Kraus argues that it is insufficient for Vigo, in a conclusory fashion, to allege that Alexander has disclosed to Kraus "all of Vigo's proprietary and confidential manufacturing partners" and "all of Vigo's proprietary and confidential processes, knowhow and means and methods used in the

manufacture and design of Vigo's plated faucets, shower doors and Matte Stone[] sinks." Vigo's Countercl. & Third-Party Compl. ¶ 50–51.

Although the Court need not credit the bare assertion that Alexander disclosed "all" of Vigo's trade secrets regarding the manufacturing of those products, there is enough factual matter alleged regarding three manufacturing partners to withstand a motion to dismiss. For example, Vigo alleges that around the time that Alexander began working for Kraus, he visited three factories in China that manufacture Vigo's faucets, Matte Stone sinks, and shower doors. *Id.* ¶¶ 44, 47–48, 57. Vigo also alleges that these Chinese factories "are not known to the public or the kitchen and bath industries, . . . are extremely difficult to locate," are strategically positioned geographically, and are the only or one of a few facilities in China that can produce Matte Stone sinks or plated faucets. *Id.* ¶¶ 50, 65, 75, 83. These allegations, accepted as true for purposes of the instant motion, are sufficient for the Court to reasonably infer that the identity of these manufacturers is a trade secret and Alexander disclosed them to Kraus in connection with his visit to them as a new Kraus employee.[12] *Cf. Benco Int'l Importing Corp. v. Krooks*, 384 N.Y.S.2d 460, 461 (App. Div. 1st Dep't 1976) (preliminarily enjoining disclosure of trade secrets relating to footwear suppliers in Taiwan). Accordingly, Vigo's proposed claims are not futile.

---

[12] Vigo does not plausibly allege that Alexander disclosed to Kraus other trade secrets concerning the manufacturing or design processes for Vigo's products. The only alleged disclosure supported by factual content is Alexander's use of the identity and location of the three manufacturers as a Kraus employee. Although Vigo attached to its reply brief a declaration stating that Kraus is now producing matte sinks with the benefit of Vigo's Matte Stone trade secrets, Reply Cert. Valdberg Supp. Vigo's Mot. Leave File Countercl. & Third-Party Compl. ¶¶ 2–4, Doc. 68, the Court may not consider this declaration on a motion to amend. *See Permatex, Inc. v. Loctite Corp.*, No. 03 Civ.943 (LAK) (GWG), 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) ("[M]aterials outside of the pleadings . . . cannot be considered on a motion for leave to amend."). However, in view of the Court's granting Vigo leave to replead its counterclaim, as discussed below, Vigo may incorporate such allegations into a repleaded counterclaim if it chooses.

## B.  Undue Prejudice

In determining whether a proposed amendment would unduly prejudice the opposing party, courts consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.* (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

Although Vigo's claims will undoubtedly require additional discovery and trial preparation and may even delay this case, given the early posture of this case—motions to dismiss are being addressed and pleadings are not even closed—Vigo's proposed amendment is not unduly prejudicial.  This early posture distinguishes this case from *Republic National Bank v. Hales*, 75 F. Supp. 2d 300 (S.D.N.Y. 1999), *aff'd sub nom. HSBC Bank USA v. Hales*, 4 F. App'x 15 (2d Cir. 2001), where the court denied leave to add claims to a "soon-to-be-resolved action" as the court ruled on a summary judgment motion.  *Id.* at 311.  Moreover, Vigo could not have brought these claims with its original answer filed in September 2017 since it did not learn of them until October 2017, requiring it to move to amend, which it did without significant delay in early January 2018.  Thus, Vigo's proposed amendment is not unduly prejudicial.

## C.  Bad Faith

To establish that a movant's amendment is made in bad faith, the opponent must show "'something more than mere delay or inadvertence . . . ,' such as seeking to derive some unique tactical advantage through their amendment."  *Usov*, 2014 WL 4354691, at *8 (quoting *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99 Civ. 3307 (RMB) (MHD), 2000 WL

426396, at *5–6 (S.D.N.Y. Apr. 20, 2000)). Kraus argues that Vigo's amendment is in bad faith

because it will complicate the case with additional parties, allegations, and issues that are

unrelated to Kraus's complaint. Pl.'s Mem. Opp'n Mot. Leave File Countercl. & Third-Party

Compl. 22. But the mere fact that the amendment will add issues to a case—something almost

all amendments do to some extent—is not grounds to infer bad faith. Moreover, although

delaying the amendment to derive some tactical advantage could show bad faith, *Primetime 24

Joint Venture*, 2000 WL 426396, at *6, as noted above, there is no showing whatsoever that Vigo

delayed in asserting its amended claims. Accordingly, the Court cannot conclude that Vigo's

amendment was made in bad faith.

### D. Improper Third-Party Pleading Under Rule 14(a)

Although there is no reason to deny Vigo's motion for leave to file its counterclaim, for

the same reasons discussed earlier, Vigo may not file its proposed third-party complaint, which is

improper under Rule 14(a). As noted, a third-party plaintiff may only bring in a third-party

defendant "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P.

14(a)(1). Because Vigo has not alleged that Alexander is or may be liable to it for the claims that

it faces, Vigo's third-party complaint against him is improper. However, Vigo will be granted

leave to replead its counterclaim to join Alexander under Rule 13(h).

### IV. Defendants' Motion to Dismiss Kraus's Complaint

Defendants have moved to dismiss Kraus's complaint for failure to state a claim under

Rule 12(b)(6), or in the alternative for judgment on the pleadings under Rule 12(c). Defs.' Mem.

Supp. Mot. Dismiss Compl. 2–3, Doc. 54-1. A motion to dismiss for failure to state a claim

"must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

Here, Defendants have already filed their answer. "When—as here—a Rule 12(b)(6) motion is

filed after an answer to the complaint has already been filed, 'the appropriate response is to treat

such an untimely motion to dismiss as a motion for judgment on the pleadings under Rule 12(c).'" *Bernato v. Arthur J. Gallagher & Co.*, No. 15 Civ. 1544 (KBF), 2015 WL 4643165, at *3 (S.D.N.Y. Aug. 5, 2015) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)); *see* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c) . . . .").

Kraus argues that Defendants' motion for judgment on the pleadings is premature.[13] Pls.' Mem. Opp'n Mot. Dismiss Compl. 6–7, Doc. 64. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Fed. R. Civ. P. 7(a) prescribes when the pleadings are closed." *Niederland v. Chase*, No. 11 Civ. 6538, 2012 WL 2402603, at *4 (S.D.N.Y. June 26, 2012) (quoting *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 n.4 (7th Cir. 1982)). Here, where a complaint, answer, and counterclaims have been (or soon will be) filed,[14] the pleadings will be closed when the counterclaim-defendants file answers to the counterclaims. *See* Fed. R. Civ. P. 7(a); *Niederland*, 2012 WL 2402603, at *4 ("[W]hen, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply." (quoting *Flora*, 685 F.2d at 211 n.4)); *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10 Civ. 2843 (JG) (ARL), 2010 WL 4038826, at *4 n.4 (E.D.N.Y. Oct. 14, 2010) ("When cross-

---

[13] Kraus also suggests that Defendants' motion is impermissible under the Court's Individual Rule of Practice 2(A)(ii), which requires the moving party to request a pre-motion conference with the Court before making the motion. Pls.' Mem. Opp'n Mot. Dismiss Compl. 4, Doc. 64. However, at a pre-motion conference requested by Kraus concerning its motion to dismiss, the Court clearly permitted Defendants to file their own motions as well. *See* Nov. 29, 2017 Conf. Tr. 28:7–10, 29:1–2, Doc. 56 ("So then there will be a motion to amend and to dismiss . . . whatever parts of his complaint. . . . You can move pursuant to Rule 12(c) to move to dismiss on the basis of the pleadings.").

[14] As noted above, Magarik already filed a counterclaim, Vigo is granted leave to file a counterclaim, and both parties are granted leave to replead their counterclaims. Both parties' third-party complaints are disallowed.

and counterclaims are filed, pleadings are not closed until answers to those claims have been filed.").

Because Kraus has not yet filed answers to Magarik's and Vigo's counterclaims—rather, Kraus chose to move to dismiss or oppose them—the pleadings are not yet closed. Thus, Defendants' motion for judgment on the pleadings is premature. *See Niederland*, 2012 WL 2402603, at *4–5 (citing *State Farm Fire & Cas. Co. v. Spradling Home Inspections, LLC*, No. 10 Civ. 01887 (NAB), 2011 WL 4056042, at *2–3 (E.D. Mo. Sept. 13, 2011)) (denying motion for judgment on the pleadings as premature where the pleadings were not closed because the plaintiff had not yet filed an answer to counterclaims and instead moved to dismiss them).

Defendants suggest that *Niederland* permitted the Rule 12(c) motion despite its prematurity. Defs.' Reply Mem. Supp. Mot. Dismiss Compl. 5, Doc. 69. While *Niederland* did briefly reach the merits of two claims at issue in the Rule 12(c) motion, the court did so as alternate holdings to the denial on prematurity grounds. *See Niederland*, 2012 WL 2402603, at *5–6. The Court declines to consider Defendants' premature Rule 12(c) motion on the eighteen-count complaint here. Also unavailing is Defendants' citation to *Provident Life & Casualty Insurance Co. v. Ginther*, No. 96 Civ. 0315 (E) (H), 1997 WL 9779 (W.D.N.Y. Jan. 3, 1997), which ruled on the merits of a Rule 12(c) motion that was premature at the time of filing but ripened with the filing of an answer to a counterclaim by the time the court ruled. *Id.* at *1; *accord NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015). In contrast, here, no answer to Magarik's or Vigo's counterclaim has heretofore been filed.

Put differently, Defendants are too late to move to dismiss, but too early to move for judgment on the pleadings. Accordingly, Defendants' motion is denied without prejudice.

Defendants will be permitted to renew their motion for judgment on the pleadings once the pleadings have closed.

## V.     Conclusion

In sum, the Court orders as follows:

1. Defendants' motion for judgment on the pleadings is DENIED without prejudice. Defendants will be permitted to renew their motion once the pleadings have closed.

2. Kraus and Third-Party Defendants' cross-motion to dismiss Magarik's counterclaim and third-party complaint is DENIED. Third-Party Defendants' cross-motion to strike Magarik's third-party complaint is GRANTED. Magarik is granted leave to replead his counterclaim to join Third-Party Defendants.

3. Vigo's motion for leave to amend is GRANTED as to its counterclaim and DENIED as to its third-party complaint. Vigo is granted leave to replead its counterclaim to join Alexander.

4. If Magarik and Vigo choose to replead their counterclaims, they must do so by **October 29, 2018**. Kraus and any other counterclaim-defendants must answer or otherwise move with respect to the counterclaims by **November 28, 2018**.

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 54, 55, 65.

It is SO ORDERED.

Dated:     September 28, 2018
           New York, New York

                                        Edgardo Ramos, U.S.D.J.