UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRAUS USA, INC.,

                      Plaintiff,

- against -

SERGIO MAGARIK a/k/a SERGEI MAGARIK, VONN, LLC a/k/a VONN LIGHTING, LLC d/b/a VONN LIGHTING, LEONID VALDBERG, VIGO INDUSTRIES, LLC, and NIGEL CHALLENGER,

                      Defendants.

**OPINION AND ORDER**

17 Civ. 6541 (ER)

SERGIO MAGARIK, *both individually and derivatively on behalf of KRAUS USA, INC.*,

                      Counterclaimant and Third-Party Plaintiff,

- against -

KRAUS USA, INC.,

                      Counterclaim-Defendant,

and

RUSSELL LEVI, MICHAEL RUKHLIN, DAN LUSBY, KRAUS CHINA, and ENPOWER, LLC,

                      Third-Party Defendants.

Ramos, D.J.:

       Kraus USA, Inc. ("Kraus") brings this action against Sergio Magarik ("Magarik"), Vonn, LLC, Leonid Valdberg ("Valdberg"), Vigo Industries, LLC ("Vigo"), and Nigel Challenger ("Challenger") (collectively, "Defendants"), arising from a drawn-out business divorce lawsuit initially filed by Magarik, a Kraus minority shareholder, and a defendant here, in Nassau County

state court. In that initial lawsuit, Magarik filed a petition for dissolution pursuant to New York Business Corporation Law ("BCL") §§ 1104(a) and 1118. He also alleged a variety of shareholder suppression claims against Kraus, and its two controlling shareholders, Michael Rukhlin ("Rukhlin"), and Russell Levi ("Levi"). For the reasons set forth below, Kraus' motion for judgment on the pleadings is GRANTED.

I.  **Factual and Procedural Background**

Kraus is a nationally recognized designer, manufacturer, and a wholesale seller of kitchen and bathroom plumbing fixtures. Doc. 1, ¶ 1. Magarik was a Kraus employee responsible for pursuing the expansion of Kraus' product line into the area of lighting and light fixtures. *Id.* ¶ 1, 21. According to Kraus, the company had been contemplating an expansion into the lighting business since 2013. *Id.* ¶ 23. Rather than pursue Kraus' business interests, Magarik allegedly partnered with Valdberg, the owner and operator of Vigo, Kraus' competitor, and misappropriated confidential information, business, methods and other trade secrets from Kraus. *Id.* ¶ 3–4. Magarik then allegedly usurped an opportunity for Kraus to enter the lighting space when he advised Kraus to not engage in a joint venture with a lighting company and then personally invested in the same venture. *Id.* ¶ 33–55.

The litigation history between the parties began on September 21, 2015 when Magarik, individually and derivatively on behalf of Kraus, sued Kraus, Rukhlin, and Levi for judicial dissolution of Kraus under BCL §§ 1104(a) and 1118.[1] Doc. 112, 10. In that action, Magarik asserted that Rukhlin and Levi diverted Kraus funds to start other personal and business

---

[1] A BCL § 1104(a) claim allows certain shareholders to present a petition for dissolution. A BCL § 1118 claim gives defendants to a § 1104(a) proceeding the option of purchasing shares from the petitioners at a fair value. Magarik also alleged breach of fiduciary duty, breach of contract, conversion, fraud, and declaratory judgment. Doc. 112, 10.

2

ventures, such as a lighting fixture business called Enpower, LLC ("Enpower"), and a Chinese company called Kraus China ("Kraus China").  Doc. 29, ¶ 29.  Levi hired Dan Lusby ("Lusby") as Kraus' Chief Financial Officer who allegedly assisted him in diverting Kraus funds to the benefit of Enpower and Kraus China.  *Id.*  However, on July 26, 2018, Magarik withdrew all claims with prejudice from the state court action except for dissolution.  Doc. 112, 10.

Kraus initiated the instant federal lawsuit on August 28, 2017, asserting claims for violation of the Defend Trade Secrets Act, violation of the Computer Fraud and Abuse Act, breach of fiduciary duty, and conversion and theft, among others.  Doc. 1, 16–28.  On September 28, 2018, the Court issued an opinion on various motions and cross motions, including granting Magarik the right replead his counterclaim.  Doc. 112.  The Court set out the factual and procedural history of the instant case in detail in its opinion, familiarity with which is presumed.  *Id.* at 2–11.  Magarik filed an amended counterclaim ("Amended Counterclaim") on October 16, 2018.  Docs. 126–27.  On December 28, 2018, Kraus filed a motion for judgment on the pleadings with respect to Magarik's counterclaims.  Doc. 140.

## II.     Legal Standards

### A.     Judgment on the Pleadings

Under a Fed. R. Civ. Pro. 12(c) judgment on the pleadings motion, courts apply the same standard as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (calling the standards "identical").  The facts are assumed true for purposes of deciding the pending motions and all reasonable inferences are drawn in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  When deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, matters subject to judicial notice, and documents submitted by the moving party

that the non-moving party either has in its possession or relied on in the pleadings. *Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). The Court takes judicial notice of the state court lawsuit in Nassau County. Doc. 1, ¶ 57.

B. **Doctrine of *Res judicata***

Kraus alleges that Magarik's counterclaims are barred by *res judicata* as he asserted the same claims in the parallel state court action nearly *verbatim*. Doc. 141, 1. The doctrine of *res judicata* broadly encompasses the notion that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Mitchell v. Nat'l Broad. Co.,* 553 F.2d 265, 268 (2d Cir. 1977) (quoting *S. Pac. R. Co. v. United States,* 168 U.S. 1, 48 (1897)). *Res judicata* increases judicial efficiency, by reducing the number of inconsistent rulings, and promoting the finality of judgments. *Schwartz v. Pub. Adm'r of Bronx Cty.*, 24 N.Y.2d 65, 74 (1969).

However, "[l]ike a river with more than one branch, *res judicata* embraces two concepts: issue preclusion and claim preclusion." *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir. 1985). Issue preclusion, often referred to as collateral estoppel, is succinctly defined as "the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided." *Id.* In *Schwartz*, the New York Court of Appeals set forth two requirements for raising the doctrine of issue preclusion in New York: (1) existence of an issue which was decided prior to the action and is decisive to the present action, and (2) that there must have been a "full and fair opportunity" to contest the decision now said to be controlling. 24 N.Y.2d at 70–71.

4

Alternatively, *res judicata* is often used more narrowly in reference to its other branch, claim preclusion—the concept that "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the full measure of relief to be accorded between the same parties on the same ... [claim or] cause of action." *Id.* (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 535 (5th Cir. 1978) (internal quotation marks omitted)). To assert an affirmative defense of claim preclusion, a party must show that an earlier decision was: (1) a final judgment on the merits, (2) made by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. *MacKinnon v. City of New York/Human Res. Admin.,* 580 Fed. App'x. 44, 45 (2d Cir. 2014).

## III. Discussion

Magarik's voluntary dismissal with prejudice of his claims in state court, bar his nearly identically claims in federal court. In *Murphy v. Gallagher*, the Second Circuit had occasion to consider the precise question presented here: "[W]hether the state-court judgment in the dissolution proceeding precludes further litigation of the issues in [the] federal…action." 761 F.2d 878, 881 (2d Cir. 1985). *Murphy* involved a state court petition for the dissolution of a family business, pursuant to BCL § 1104(a). *Id.* The state court found no basis for these claims and dismissed the action. *Id.* The *Murphy* court applied the *Schwartz* test[2] and held that the state court's final decision barred federal action—where the issues were identical in the state and federal proceedings—and had been fully and fairly litigated by the minority shareholders. *Id.* at 882–83, 886.

---

[2] When raising the doctrine of issue preclusion in New York state, courts must consider (1) the existence of an issue which was decided prior to the action and is decisive to the present action, and (2) that there must have been a "full and fair opportunity" to contest the decision now said to be controlling. *Schwartz*, 24 N.Y.2d at 70–71.

5

Here, Magarik dismissed his state court claims of breach of fiduciary duty, breach of contract, conversion, fraud, and declaratory judgment, with prejudice. Doc. 112, 10. In the Amended Counterclaim, Magarik makes nearly identical claims, for example: breach of fiduciary duty, breach of shareholder agreement, conversion, legal and equitable fraud, and declaratory judgment, among other claims. Doc. 126, 17–25. Magarik does not dispute that the issues in the state and federal actions are duplicative nor does he argue that he did not have a full and fair opportunity to litigate the claim.[3] Based on these facts, the *Schwartz* test is satisfied, and the federal counterclaims are barred.

However, Magarik asserts three defenses: (1) that the unique nature of §§ 1104(a) and 1118 actions do not lend themselves to *res judicata* or collateral estoppel; (2) that Kraus and the third-party defendants are judicially and equitably estopped from arguing *res judicata* or collateral estoppel on the § 1118 action; and (3) that the nonparties to the § 1118 action cannot claim *res judicata*. The Court addresses each claim in turn. Doc. 147, 1–14.

### A. *Res judicata* Applies in §§ 1104(a) and 1118 Cases

Petitions pursuant to BCL § 1104(a) are "special proceedings" with unique procedures for the dissolution of a company. Doc. 147, 5. BCL § 1104(a) empowers a shareholder with 20% or more of corporation stock to file a petition for dissolution of the corporation on the grounds that those in control have engaged in oppressive, fraudulent, or wasteful behavior, among others, regarding the corporation's assets. Section 1118 is a corollary to § 1104(a). It grants non-petitioning shareholders, as well as the corporation itself, the right to avoid

---

[3] Importantly, while Magarik voluntarily dismissed the claims with prejudice, such dismissals have *res judicata* effect on future actions. *Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir. 1986). A dismissal with prejudice of a "parallel state court action is *res judicata*" as to its pending federal counterpart. *Official Publications, Inc. v. Kable News Co.*, Inc., 811 F. Supp. 143, 146 (S.D.N.Y. 1993).

dissolution by timely electing to purchase the petitioning shareholder's shares "at their fair value." BCL § 1118(a). If the parties cannot agree on the fair value of the shares, the court may stay the proceedings and determine the fair value, also called a valuation hearing. *In re Dissolution of Penepent Corp., Inc.,* 96 N.Y.2d 186, 191 (2001).

Magarik alleges that the unique attributes for dissolution proceedings under §§ 1104(a) and 1118 demonstrate that his duplicate state and federal claims are not subject to claim preclusion or collateral estoppel. Doc. 147, 5. However, he provides no case law or statute to support this theory. Furthermore, in *Murphy,* the Second Circuit applied *res judicata* when the underlying state claims were brought pursuant to a § 1104(a) proceeding. 761 F.2d at 882–83, 886; *see also Richard K. v. United BeHavioral Health*, No. 18CV6318GHWBCM, 2019 WL 3083019, at *8 (S.D.N.Y. June 28, 2019), *report and recommendation adopted*, No. 1:18-CV-6318-GHW, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (same). Accordingly, the special nature of §§ 1104(a) and 1118 proceedings do not preclude the application of the doctrine of *res judicata*.

### B. Judicial Estoppel Does not Apply Here

Next, Magarik contends that Kraus and the third-party defendants are judicially and equitably estopped[4] from raising *res judicata* claims on the § 1118 action. Doc. 147, 6. The doctrine of judicial estoppel applies when a party successfully assumes a position in a legal proceeding, and later assumes a contrary position to the prejudice of the party who had acquiesced to the original position. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

---

[4] Magarik references the equitable estoppel doctrine without citation or explanation. Under New York law, equitable estoppel is a defense applied when one party reasonably relies upon the misrepresentations of another party. *See e.g., Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) ("[E]quitable estoppel is a principle or an affirmative defense that serves to stop another party from denying a material fact."). This doctrine does not apply in the instant case and Magarik makes no attempt to argue that it does. Therefore, the Court will not rely upon this doctrine.

Judicial estoppel is a discretionary and equitable doctrine intended to prevent improper use of judicial machinery. *Id.* at 750. When applying the doctrine of judicial estoppel, courts generally look for the existence of three factors: "(1) that a party's new position is clearly inconsistent with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Intellivision v. Microsoft Corp.*, 484 Fed. Appx. 616, 619 (2d Cir. 2012) (citing *New Hampshire*, 532 U.S. at 750–51) (internal quotations omitted).

Judicial estoppel is not applicable here because Kraus has consistently asserted that the state court and federal court claims are duplicative. Magarik argues that during a November 29, 2017 pre-motion conference, Kraus characterized the § 1118 proceeding as a mere valuation case that had nothing to do with the claims in Kraus' complaint. Doc. 147, 6. Magarik further asserts that Kraus then took a contradictory position in the motion for judgment on the pleadings by claiming that Magarik's state and federal court claims are duplicative. Doc. 147, 6. While Kraus' counsel did call the § 1118 action a "valuation proceeding," context is important. Kraus' counsel was arguing that under state law Magarik would not have standing to bring the alleged malfeasance harms outside of the § 1118 proceedings because they were derivative. Doc. 56, 8–9. And in fact, the transcript shows it was Magarik's counsel who said that the § 1118 action is a "valuation case that has nothing to do with the claims before the Court here today." Doc. 56, 11, 13.

But even if Kraus' counsel characterized the Nassau County actions as a "valuation proceeding," it is not contradictory because the claims at issue here are malfeasance claims which Magarik stipulated to dismiss with prejudice, not the § 1118 valuation claims. Doc. 141,1.

8

Furthermore, Kraus' counsel explicitly stated during the pre-motion conference that the federal claims were "identical *verbatim* claims taken out of one pleading in state court and dropped into a pleading in federal court and they're at issue in Nassau County." *Id.* at 10 (alteration added). Accordingly, there is no inconsistency and this Court declines to apply judicial estoppel to Kraus' *res judicata* claims.

### C. Nonparties were Privies in the § 1118 Action

Finally, Magarik asserts that *res judicata* does not apply to its claims against Enpower, Kraus China, and Lusby because they were not parties to the § 1118 litigation. Doc. 147, 8–14. The third prong of *res judicata* requires that the same parties or their privies be involved in both actions in order to preclude the later litigation. *See, e.g., Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003). But it is well-settled in this Circuit that literal privity is not required for *res judicata* to apply. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Privity exists when the interests of a nonparty were adequately represented in the initial action. *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 382 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000). A nonparty's interests can be adequately represented when they had a sufficiently close relationship with a defendant in the prior action to support preclusion. *Id.*

During the Nassau County litigation, Levi and Rukhlin represented the interests of Enpower and Kraus China. Enpower and Kraus China are both entities owned and controlled by Levi and Rukhlin. Doc. 126, 11–12. *See Karali v. Araujo*, 11 N.Y.S.3d 823, 826 (N.Y. Sup. 2015) (finding that, under New York law, "[c]ontrolling status over a corporation constitutes privity with it as a matter of law"); *see also Melwani v. Jain*, 02 Civ. 1224, 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) (applying *res judicata* even when two companies were separate entities, because they had overlapping shareholders, officers, and directors). Accordingly, Enpower and Kraus China were adequately represented in the § 1118 action.

9

Similarly, Kraus, Levi, and Rukhlin represented Lusby's interests in the § 1118 action because he was a Kraus corporate officer. *See* Doc. 126, ¶ 5 (naming Lusby as Kraus' Chief Financial Officer); *see also Hellman v. Hoenig*, 989 F. Supp. 532, 537 (S.D.N.Y. 1998) (finding privity between corporate defendants and their directors, officers, and large shareholders); *Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co.*, No. 00 CIV 5173 (MBM), 2001 WL 1658257, at *4 (S.D.N.Y. Dec. 26, 2001) (holding identity of interest between corporate officer and entity he or she leads is sufficient to establish privity). Furthermore, Lusby allegedly assisted Levi and Rukhlin in diverting financial resources out of Kraus and into Kraus China. Doc. 126, ¶ 50. The Second Circuit has found that even if not an officer, an employee acting within the scope of his employment in connection with the matter at issue will have privity for the purpose of claim preclusion. *Krepps v. Reiner,* 377 F. App'x 65, 68 (2d Cir. 2010). Thus, Lusby was a privy in the § 1118 action.

Magarik makes one last effort to avoid the doctrine of *res judicata* by claiming Kraus failed to explain whether they sought to dismiss Magarik's claims arising before or after Levi's and Rukhlin's election to buyout his shares in the § 1118 action. Doc. 147, 14. Magarik claims this is critical because the § 1118 action only pertained to claims leading up to and including the date of election. *Id.* However, Magarik does not delineate any claims after the election at issue here. Instead, he improperly conflates the § 1118 valuation with the malfeasance claims. Doc. 141, 1. Accordingly, the doctrine of *res judicata* bars Magarik's counterclaims.

## IV. Conclusion

In sum, Kraus' motion for judgment on the pleadings is GRANTED. The parties are directed to attend a status conference on October 10, 2019 at 11:30 A.M. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 140.

It is SO ORDERED.

Dated: September 25, 2019
New York, New York

Edgardo Ramos, U.S.D.J.