Ely Goldin, Esq.
FOX ROTHSCHILD LLP
101 Park Avenue, Suite 1700
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

*Attorneys for Plaintiff Kraus USA, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRAUS USA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SERGIO MAGARIK a/k/a SERGEI MAGARIK,<br>VONN, LLC a/k/a VONN LIGHTING, LLC d/b/a<br>VONN LIGHTING,<br>LEONID VALDBERG,<br>VIGO INDUSTRIES, LLC, and<br>NIGEL CHALLENGER<br>        Defendants. | No. 1:17-cv-6541<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Jury Trial Demanded) |

   Plaintiff Kraus USA, Inc. ("Plaintiff" or "Kraus"), by its attorneys, Fox Rothschild LLP, as and for its First Amended Complaint against the above named Defendants Sergio Magarik a/k/a Sergei Magarik ("Magarik"); Vonn, LLC a/k/a Vonn Lighting; LLC d/b/a Vonn Lighting ("Vonn"); Leonid Valdberg ("Valdberg"); Vigo Industries, LLC ("Vigo"); and Nigel Challenger ("Challenger"), (Magarik, Vonn, Valdberg, Vigo and Challenger being the "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

   1.  Plaintiff is a nationally renowned designer, manufacturer and a wholesale seller of kitchen and bathroom plumbing fixtures, both on-line and through commercial distribution channels, including but not limited to The Home Depot, and Lowe's, as well as directly to builders.

2.      While serving in a fiduciary capacity, Defendant Magarik was charged with the responsibility of pursuing an expansion of Plaintiff's product lines into the area of lighting and lighting fixtures.  Instead of pursuing the expansion on behalf of Plaintiff as legally required, Defendant Magarik embarked on an elaborate campaign of fraud and deception designed to usurp Plaintiff's valuable business opportunity and, in the process, purposefully harm Plaintiff.

3.      To that end, Magarik partnered up with Valdberg, the owner and operator of Vigo, a competitor of Plaintiff.  For years, Vigo had infringed upon Plaintiff's intellectual property rights by copying Plaintiff's products and then undercutting Plaintiff's pricing in an effort to expand Defendant's market share.  In fact, Defendant Magarik was responsible for protecting and enforcing Plaintiff's intellectual property rights against infringers like Vigo.

4.      Instead of policing Vigo's conduct and enforcing Plaintiff's rights, Magarik, in collaboration with Vigo's founder, Defendant Valdberg, misappropriated Plaintiff's confidential information, business methods, know-how and other trade secrets and used the purloined information to develop and launch a usurped business opportunity that clearly and indisputably originated with Plaintiff.

5.      Furthermore, because development of the usurped opportunity was being financed by Vigo, Plaintiff's competitor, Magarik committed corporate treason by passing sensitive and protected information regarding virtually every aspect of Plaintiff's business directly to its primary enemy.

6.      In furtherance of their alliance, the main purpose of which was the cause harm to Plaintiff, Defendants also hired away Challenger, a key Kraus employee who was subject to a written Confidentiality Agreement that, ironically, was prepared and negotiated by Defendant Magarik during his tenure at Kraus.

7.     However, just days before hiring Challenger and while he was still a Kraus employee, Defendants encouraged and persuaded Challenger to violate his Confidentiality Agreement (and other duties) by remotely accessing Plaintiff's computer system in the middle of the night for the purpose of downloading confidential and proprietary information which Defendants then used to benefit the usurped opportunity as well as Vigo's ongoing infringement.

8.     Then, after placing Challenger on Vonn payroll, Defendants further encouraged him to use his contacts, friendships and influence with Plaintiff's employees to obtain and copy data, processes, materials and other valuable information developed by Challenger at Kraus.

9.     Thus, in furtherance of their unlawful conduct, Defendants, among other things, hacked into protected computer systems, misappropriated valuable trade secrets, breached (or aided in the breach of) fiduciary and other duties owed to Plaintiff, tortiously interfered with contractual rights, and engaged in fraud and other actionable conduct to Plaintiff's great harm and detriment.  Plaintiff now seeks several millions of dollars in damages together with equitable relief for gross and ongoing violations of federal and state law.  Plaintiff further seeks a declaration of rights that Vonn is a business opportunity that originated with Plaintiff and that all profits generated by Vonn since its inception must be disgorged in accordance with New York law.

## **PARTIES**

10.     Plaintiff **Kraus** is a New York corporation with a principal place of business in Port Washington, New York.

11.     Defendant **Magarik** is an adult individual who, upon information and belief, resides at 6945 108th Street, PH-10B, Forest Hills, New York 13375..

12.     Defendant **Vonn** is a New York corporation with a principal place of business at 3245 Hunters Point Avenue, Long Island City, New York 11101.

13.     Defendant **Valdberg** is an adult individual who, upon information and belief, resides, maintains a principal place of business or may otherwise be served at 11 Broadway, Suite 615 New York, New York 10004.

14.     Defendant **Vigo** is a New Jersey limited liability company with a principal place of business at 138 West 25th Street, 3rd Floor, New York, New York 10001.

15.     Defendant **Challenger** is an adult individual who, upon information and belief, resides at 650 Shore Road, Apt 1Q, Long Beach, New York 11561.

<u>JURISDICTION AND VENUE</u>

16.     Subject matter jurisdiction is predicated upon the existence of a federal question pursuant to 28 U.S.C. §1331 and the Court's supplemental jurisdiction as set forth in 28 U.S.C. §1367.

17.     This Court has personal jurisdiction over the corporate and individual Defendants said Defendants are (i) entities organized under New York law; (i) foreign entities qualified to do business in New York state; and (iii) individuals who are residents of New York state.

18.     Alternatively, this Court has personal jurisdiction over any non-resident Defendants pursuant to CPLR §§ 302(a)(1) and 302(a)(2) because they, among other things, transact business within the State of New York and have committed tortious acts within the State of New York.

19.     Venue is proper within this federal judicial district because one or more of the Defendants resides and/or maintains a principal place of business in the Southern District of New York.   Furthermore, a substantial portion of the acts and omissions giving rise to this action occurred in the Southern District of New York.

<u>FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

A.     <u>Background</u>

20.     Plaintiff designs, manufactures and sells to the wholesale market, kitchen and bathroom plumbing fixtures, both on-line and through commercial distribution channels, including but not limited to the Home Depot and Lowe's, as well as directly to builders.

21.     At all times relevant hereto, Defendant Magarik served as an employee, officer and director of Plaintiff, roles that carried fiduciary obligations.

22.     At all times relevant hereto, Defendant Magarik held himself out as a "founding partner" of Kraus.

**B.     The Origins of Kraus' Lighting Opportunity**

23.     Plaintiff had been contemplating a potential expansion into the lighting space since at least February 2013.

24.     By email dated February 8, 2013, Plaintiff's principals, including Defendant Magarik, had intended to attend the Lightfair International tradeshow, a tradeshow exhibiting innovations in lighting and lighting technology.  *See,* Exhibit "A".

25.     Plaintiff's interest in lighting was driven, in part, by the successful expansion into this same space by Build.com, a major online DIY outlet as well as an online retailer of Plaintiff's sink and faucet products.

26.     Build.com is an online home improvement retailer which provides a high-tech DIY marketplace.  Build.com began by selling faucets online in 2000 and, since then, has expanded to plumbing, lighting, hardware and appliances.

27.     As of October 2013, Plaintiff was a major participant in Build.com's online DIY marketplace and Plaintiff's expansion into the lighting space "piggybacked" on Build.com's expansion with the goal of elevating Plaintiff as one of the preeminent lighting suppliers on Build.com's online platform.

28.     During this time period, Build.com appointed Zak Kearns ("Kearns") as a brand manager responsible for the Kraus account.

29.      By email dated October 14, 2013, directed to Magarik, Kearns advised Plaintiff to expand Plaintiff's product lines into the area of lighting and lighting fixtures ("Lighting Opportunity").  *See,* Exhibit "B".

30.     According to Kearns, (i) "lighting is a 100M business for [Build.com]"; (ii) "[Kraus has] more brand recognition than 90% of lighting manufacturers"; (iii) lighting has a "[n]early unlimited growth potential"; and (iv) "[is] easily cross-sold on [Kraus] bath products."

**C.     Kraus Considers the Lighting Opportunity**

31.     As of March 2014, Kraus was still considering the Lighting Opportunity and whether the time for expansion was right.

32.     As of March 24, 2014, Plaintiff (i) referred to the Lighting Opportunity as "Kraus Lighting"; (ii) was exploring legal and financing structures best suited for the development of the new lighting venture; (iii) had developed plans to potentially develop and grow the Kraus Lighting brand. *See*, Exhibit "C".

33.     Plaintiff was also considering the possibility of forming a new company for purposes of the Lighting Opportunity or, alternatively, engaging in a joint venture with The New Lighting Company, otherwise known as "NLCO", for a somewhat different lighting opportunity focusing primarily on commercial lighting products and fixtures.

34.     However, primarily upon the advice of Defendant Magarik, Plaintiff decided to place the expansion into the Lighting Opportunity on temporary hold until a later point in time in order to focus on Plaintiff's growth in its primary space, *i.e.* residential sinks and faucets.

35.     In rendering his advice, Defendant Magarik downplayed the upside inherent in the Lighting Opportunity and cautioned that expansion into this product area would require a

significant outlay of time and capital as well as the diversion of substantial human resources away from Plaintiff's primary product line.

36.     The expansion, according to Defendant Magarik, would jeopardize Plaintiff's growth trajectory and de-rail Plaintiff from its principal mission.

37.     When one of Plaintiff's founders, Mr. Russell Levi ("Levi"), pressed the parties to consider, at a minimum, pursuing the much more narrow NLCO opportunity focusing on commercial lighting fixtures and panels, Defendant Magarik declined participation.

38.     Unbeknownst to Plaintiff, Defendant Magarik's advice was influenced by his personal objectives and not the Plaintiff's business interests.

**D.     Magarik Usurps the Lighting Opportunity**

39.     In fact, the expansion into the Lighting Opportunity would not have been nearly as risky and time consuming as Defendant Magarik had lead Plaintiff to believe.

40.     Unbeknownst to Plaintiff, in or around late 2014 or early 2015, Defendant Magarik contacted Kearns, Plaintiff's brand manager at Build.com, and informed him that Magarik was personally interested in the Lighting Opportunity.

41.     Kearns possessed a deep understanding of (i) the Lighting Opportunity based on his own experience and Build.com's expansion into the lighting space; and (ii) Plaintiff's core business in that he was the dedicated account representative for Plaintiff at Build.com.

42.     Considering that Defendant Magarik was affiliated with Kraus, an important Build.com business partner, Kearns graciously agreed to assist.

43.     Magarik secretly hired Kearns as a private consultant and used his deep knowledge and understanding of the Lighting Opportunity and his experience in the industry to (i) identify product lines; (ii) develop online marketing strategies; (iii) identify suppliers; (iv) gain access to a

distribution network (primarily developed by Plaintiff); (v) and establish credibility with retailers by trading on his affiliation and connection with Plaintiff.

44.     In fact, with Kearns' assistance, Defendant Magarik was so successful that he was ultimately able to convince Kearns to join his side business.

45.     Defendant Magarik, who was responsible for managing and maintaining Plaintiff's relationship with Build.com and who was Plaintiff's primary point of contact with Kearns, never informed Plaintiff that Kearns might be available to consult for or even join Plaintiff for purposes of pursuing the Lighting Opportunity.  Rather, Defendant Magarik suppressed information as to Kearns' availability and, through dissemblance and misinformation, allowed Plaintiff to believe that Kraus lacked the personnel and expertise necessary to pursue the expansion.

46.     With Kearns' advice and by leveraging customer and vendor relationships developed by Plaintiff, Defendant Magarik quickly gained traction.

**E.     Magarik Forms Vonn**

47.     Encouraged by his early success, Defendant Magarik decided to usurp the Lighting Opportunity for himself.

48.     On or about September 1, 2014, Defendant Magarik registered a domain name known as www.vonnlighting.com (the "Vonn Domain").

49.     On or about February 5, 2015, Defendant Magarik formed Vonn, a separate entity organized under New York law.

50.     Throughout the aforementioned period and certainly as of February 5, 2015, Defendant Magarik served as an employee, officer, director, manager or other fiduciary of Plaintiff with rights and obligations attendant thereto.

51.     Vonn was formed to specifically pursue the Lighting Opportunity.

52.     At the time of Vonn's formation, Plaintiff had not abandoned the Lighting Opportunity.

53.     At the time of Vonn's formation, Defendant Magarik had not sought Plaintiff's permission to pursue the Lighting Opportunity in his own right separately from Plaintiff.

54.     Defendant Magarik formed Vonn surreptitiously without notice to Plaintiff or its principals.

55.     At the time of Vonn's formation, Defendant Magarik still stood in a fiduciary capacity to Plaintiff Kraus.

**F.**     **Magarik Joins Forces With Plaintiff's Primary Infringer**

56.     In the months leading up to February 5, 2015, certain differences had arisen as between Defendant Magarik and Plaintiff unrelated to the Lighting Opportunity.

57.     Those differences are the subject of a separate and unrelated civil action entitled *Magarik v. Kraus USA, Inc.,* Index No. 606128/2015, which was filed in the Supreme Court of the State of New York, Nassau County (the "Nassau County Action").

58.     Already dissatisfied with his station and/or position at Kraus, it is believed and therefore averred that during the second half of 2014, Defendant Magarik sought capital from Defendant Valdberg in exchange for a substantial equity stake in Vonn.

59.     To encourage Valdberg to invest in Vonn, Defendant Magarik committed an act of corporate treason.

60.     Valdberg is the owner of Vigo.

61.     Vigo is a competitor of Plaintiff with regard to Plaintiff's primary product line, *i.e.* sinks and faucets.

62.     In addition to being a competitor, Vigo is a well-known infringer who has a long track record of copying Plaintiff's products for years.

63.     For example (and without limitation), according to a review posted on a popular recruiting website known as Glassdoor.com by a former Vigo employee, the company should "stop copying companies like . . . Kraus.   Innovate, don't replicate."

64.     Plaintiff invested substantial time and expense into creating new, innovative and distinctive designs for sinks and faucets only to have its products, trade dress and images copied verbatim by Vigo.  *See, e.g.*  Exhibit "D".

65.     Defendant Magarik was responsible for policing acts of infringement and enforcing Plaintiff's intellectual property rights.

66.     In an email dated June 1, 2010 which was authored by Defendant Magarik while he was still a Kraus representative (and written in transliterated Russian, his first language) Magarik complained about Vigo's infringing conduct, noting that "this is not normal . . . . [Vigo] even copied this one."  *See,* Exhibit "E".

67.     Later, instead of enforcing said rights, in exchange for an investment of capital into the usurped Lighting Opportunity, Defendant Magarik is believed to have afforded Defendants Vigo and Valdberg access to Plaintiff's (i) technical product specifications; (ii) information regarding upcoming designs; (iii) sales data reflecting the success and/or popularity of certain products; (iv) sensitive e-commerce data used to increase the visibility and popularity of certain products; and (v) other confidential and commercially sensitive information not available to Vigo or the general public and that qualifies as a "trade secret" under applicable law.

68.     Additionally, through participation in Vonn, it is believed that Defendant Vigo gained complete access to Plaintiff's (i) customer lists, vendor relationships and the identity of virtually every contractual counterparty involved in Plaintiff's business; (ii) internal cost structure

and operating expenses which enabled Vigo to undercut Plaintiff on pricing; (iii) e-commerce know-how; and (iv) other information that qualifies as a "trade secret" under applicable law.

69.     Plaintiff believes and therefore avers that Defendants Vigo and Valdberg knew (actually and/or constructively) that Defendant Magarik had usurped the Lighting Opportunity and that he was dissatisfied with his then-existing relationship with Plaintiff.

70.     By agreeing to invest in Vonn, Defendants Vigo and Valdberg specifically intended to (i) aid, abet and otherwise assist in the usurpation and misappropriation of the Lighting Opportunity; (ii) profit from the misappropriated and usurped Lighting Opportunity; and (iii) benefit and profit from access to Plaintiff's trade secrets in order to gain market share in Plaintiff's primary product line and increase the success of its infringing activities.

## G.     Defendant Magarik Bides His Time At Kraus

71.     After forming Vonn, and for a period of approximately eight (8) months thereafter, Defendant Magarik performed virtually none of his assigned Kraus-related tasks and responsibilities while living off of Plaintiff's payments that, together with capital invested by Defendants Valdberg and Vigo, he used to develop Vonn.

72.     Instead, Defendant Magarik used his affiliation with Kraus to secretly establish relationships and accounts for Vonn.

73.     It is believed and therefore averred that Defendant Magarik contacted Plaintiff's account representatives at major retail outlets like Home Depot, Build.com and possibly others to establish himself as an approved supplier of lighting products.

74.     Generally, it takes significant effort for a new supplier to gain access to coveted retail outlets like Home Depot and Lowe's.

75.     Through his affiliation with Kraus, an established supplier and/or through deceptively vague statements signed to blur the distinction between Kraus and Magarik's Lighting Opportunity, Magarik is believed to have gained almost immediate access.

76.     While working at Kraus (but primarily) developing Vonn, Defendant Magarik is believed to have fulfilled his promise to Defendants Vigo and Valdberg by passing confidential information regarding Plaintiff and its products, business and marketing strategies.

77.      Furthermore, to conceal his misconduct, Defendant Magarik strategically created artificial conflict within Kraus, hoping that the conflict would divert attention from his efforts to develop the usurped opportunity.

78.     With time, Defendant Magarik's devotion and contribution to Plaintiff's business grew increasingly limited and his absence from work became more frequent.

79.     Upon information and belief, Defendant Magarik's time was primarily devoted to the development of Vonn and the Lighting Opportunity including, without limitation, (i) the negotiation and execution of a commercial lease for space in Long Island City, New York; (ii) the hiring and onboarding of Vonn employees; (iii) business travel to visit suppliers and establish distribution channels and (iv) other activities incidental to the business affairs of Vonn.

80.     Furthermore, during this time period, Defendant Magarik frequently associated with Defendant Valdberg and the two even attended a lighting trade show in China under the guise of a pre-planned vacation.

81.     On or about September 10, 2015, Plaintiff's representative confronted Defendant Magarik with evidence that he had formed a new enterprise with Defendant Valdberg.

82.     When confronted, Defendant Magarik (i) acknowledged that he and Valdberg had launched a new venture; (ii) acknowledged that Valdberg and Vigo were competitors of Plaintiff

and infringers of Plaintiff's rights; and (iii) claimed that he and Valdberg had made a handshake confidentiality agreement not to discuss Plaintiff's business with each other.

83.     Effective September 10, 2015, Defendant Magarik was terminated from his position as an employee, officer or director of Plaintiff.

84.     Furthermore, no wall of confidentiality exists between Vonn and Vigo with regard to Plaintiff's business.

**H.     Defendants Raid and Hack Kraus**

85.     Almost immediately after his termination, Defendants began to actively solicit Plaintiff's employees, encouraging them to disclose confidential information and accept employment with Defendants.

86.     Shortly after Magarik's termination, Defendant Vigo solicited and hired Daniel Racinos ("Racinos"), a long-time Kraus employee who had knowledge of Plaintiff's primary product line and content strategy.

87.     Racinos was a party to that certain Employee Confidentiality Agreement made on or about July 7, 2014 (the "Racinos Agreement") while Defendant Magarik was still employed at Kraus.  *See*, Exhibit "F".

88.     Furthermore, on or about March 14, 2016, Defendant Vigo's representative Denise Sias ("Sias") targeted Plaintiff's creative director for recruitment at Vigo's "beautiful showroom/office in the Chelsea District of Manhattan."  *See*, Exhibit "G".

89.     Later, on or about May 10, 2017, Sias also targeted Plaintiff's Key Accounts Manager for recruitment.   See, Exhibit "H".

90.     Furthermore, on or about May 10, 2017, Defendants Magarik and Vonn solicited and hired Defendant Nigel Challenger ("Challenger"), a long-time Kraus employee primarily involved in the area of product development and customer service.

91.     As a key employee, Challenger was a party to that certain Employee Confidentiality Agreement dated June 25, 2014 (the "CA").  *See*, Exhibit "I".

92.     Pursuant to Sections 1, 2 and 3 of the CA, Challenger agreed to (i) hold Plaintiff's Company's Proprietary Information, Third Party Information and Confidential Information (all terms defined in the CA) in strict confidence during the terms of his employment and thereafter.

93.     Pursuant to Section 3 of the CA, Challenger agreed that the non-disclosure obligations set forth in Section 3 would survive his termination.

94.     Pursuant to Section 3 of the CA, Challenger agreed to notify any new employer of the restrictions contained in the CA prior to commencing employment.

95.     Pursuant to Section 4 of the CA, Challenger agreed not to solicit any person or entity who was an employee, customer, supplier, distributor, consultant or advisor to the Plaintiff.

96.     Defendants had actual knowledge of the existence and terms of Challenger's CA which had been executed with Defendant Magarik's knowledge and consent during his tenure at Kraus.

97.     On or about April 27, 2017 at approximately 11:54 p.m., it is believed that Challenger, at Defendant's initiative, remotely accessed Plaintiff's computer system and, in particular, its Business Intelligence software and downloaded sensitive and proprietary information including, without limitation, details regarding Plaintiff's current customers, vendors, current and historical sales data as well as product pricing. *See,* Exhibit "J"

98.     After remotely accessing Plaintiff's computer system, Challenger attempted to cover his tracks by deleting access history stored in Plaintiff's computer system.

99.     Thereafter, on Monday, May 1, 2017, Challenger unexpectedly gave notice of immediate resignation by email without specifying any reason and without disclosing that he had accepted employment.

100.     Thereafter, on or about July 20, 2017, Challenger contacted a Kraus employee and made the following request via text message:

> Good morning brother, can you send me a copy of the Kraus warranty I wrote?  I am rewriting VONN's and I would like to use it as a template.  Can you send it to nigelchallenger@gmail.com?

*See*, Exhibit "K".

101.     On or about July 25, 2017 at approximately 10:47 a.m., notwithstanding the terms and conditions of the CA, Defendant Challenger emailed Kraus employee Emma Palma, requesting that she contact him in order to provide Challenger with additional information regarding Kraus.

## I.     **Harm to Plaintiff**

102.     In sum, Defendant Magarik (i) discouraged Plaintiff from pursuing the Lighting Opportunity under false pretenses; (ii) surreptitiously usurped the Lighting Opportunity despite the fact that it originated with and belongs to Plaintiff; (iii) awarded an equity interest in Vonn, the entity formed to hold the Lighting Opportunity, to Defendant Valdberg with knowledge that said Defendant was not only a competitor of Plaintiff but Plaintiff's chief nemesis who had been infringing upon and otherwise ripping Plaintiff off for years; (iv) accepted capital from Defendant Valdberg and agreed, in return, to commit corporate treason by providing sensitive commercial information and trade secrets to the proverbial "enemy"; (v) used false conflict, dissemblance and other tactics to cover up his disloyalty and throw Plaintiff and its principals off track; (vi) devoted

most of his efforts to the erection, launch and promotion of Vonn, as opposed to Plaintiff's legitimate business affairs while drawing a salary and/or distributions; (vii) opened key distribution channels and established other business relationships with regard to Vonn on the basis of his affiliation with Kraus; and (viii) after being confronted with acts of disloyalty, harming Plaintiff further by directly and/or indirectly soliciting away key employees and/or encouraging said employees to hack Plaintiff's computer systems.

103.    Defendants' conduct is egregious and unlawful.  Plaintiff has been damaged in an amount of several millions of dollars because of Defendants' unlawful conduct in this matter and seeks, *inter alia*, an award of damages, equitable relief in the form an accounting, disgorgement and the imposition of a constructive trust, and other relief as set forth more fully below.

<strong><u>AS AND FOR A FIRST CAUSE OF ACTION</u></strong><br>
<strong>(Violation of the Defend Trade Secrets Act)</strong><br>
<strong>(Plaintiff v. All Defendants)</strong>

104.    Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 103 of the Complaint.

105.    On or after May 10, 2017, Defendants misappropriated and/or continued to misappropriate Plaintiff's valuable Trade Secrets which are used in connection with interstate commerce.

106.    At all times relevant hereto, Plaintiff took reasonable measures maintain the confidentiality and/or secrecy of Plaintiff's Trade Secrets.

107.    The Trade Secrets are valuable and crucial to Plaintiff's business functions and competitive position.

108.   Defendants, without Plaintiff's consent, downloaded and/or otherwise used Plaintiff's Trade Secrets for their own use and financial gain and to the Plaintiff's great harm and detriment.

109.   As a direct and proximate result of Defendants' conduct, Plaintiff has been harmed as heretofore alleged.

110.   Defendants' conduct was willful, wanton and outrageous thereby justifying the award of punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of the Computer Fraud and Abuse Act)**
**(Plaintiff v. All Defendants)**

111.   [Dismissed pursuant to Order dated May 12, 2020 ECF# 166].

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
**(Plaintiff v. Defendant Magarik)**

112.   Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 111 of the Complaint.

113.   Defendant Magarik breached his fiduciary duty to Plaintiff.

114.   Magarik's actions and conduct in placing the business interests of Vonn and/or Vigo and himself ahead of Kraus's business interests while serving as an employee, officer, director, manager or other fiduciary of Plaintiff, delegated specific and critical business operation tasks for Vonn that Kearns was paid and reimbursed to perform, constitute a breach of Magarik's fiduciary duty of loyalty to Kraus.

115.   Magarik's actions were intentionally undertaken with knowledge they would financially harm Kraus, but were nevertheless done so while Magarik still worked for Kraus to advance the interests of Vonn and Vigo at Kraus's expense.

116.    Plaintiff placed Magarik in a significant and critical position of trust and confidence regarding Kraus's marketing strategy and marketing plans, as well as Kraus's customer accounts, yet Magarik completely breached that confidence and trust to Kraus's detriment.

117.    In addition to breaching fiduciary obligations inherent in his status as an employee, Defendant Magarik also breached duties of loyalty arising from his status as an officer and director of Kraus by usurping the aforementioned Lighting Opportunity and by aiding and abetting Vigo's ongoing efforts to harm Plaintiff.

118.    These breaches have caused and continue to cause Plaintiff significant damage.

119.    As a direct and proximate result of Defendant Magarik's breach of his fiduciary duty, Plaintiff has incurred substantial damages in an amount to be determined at trial, together with interest, costs and disbursements thereon.

120.    Defendant Magarik's breach was intentional, willful and malicious, thus justifying the award of punitive and/or exemplary damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Conversion and Theft)**
**(Plaintiff v. Defendant Magarik)**

121.    Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 120 of the Complaint.

122.    By reason of the aforesaid, Defendant Magarik converted Plaintiff's physical, electronic, tangible and intangible property without authorization to Plaintiff's great harm and detriment.

123.    As a direct and proximate result of Defendant Magarik's conversion, Plaintiff has incurred substantial damages in an amount to be determined at trial, together with interest, costs and disbursements thereon.

124.    Defendant Magarik's conduct was intentional, willful and malicious thus justifying the award of punitive and/or exemplary damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Imposition of a Constructive Trust)
### (Plaintiff v. Defendant Vonn)

125.    Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 124 of the Complaint.

126.    By reason of the aforesaid, and considering that Defendant Magarik misappropriated the Lighting Opportunity, Plaintiff seeks the imposition of a constructive trust over Defendant Vonn, the disgorgement of all profits realized by Vonn from its date of inception up through and including the present

127.    Plaintiff further seeks an Order directing Defendant to disgorge all future profits realized by Defendant relative to the Lighting Opportunity.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Demand for an Accounting)
### (Plaintiff v. Defendants Magarik and Vonn)

128.    Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 127 of the Complaint.

129.    At all times relevant hereto, a fiduciary relationship existed between Plaintiff and Defendant Magarik.

130.    The amount of money due from Defendant Vonn to Plaintiff is unknown and cannot be ascertained without an accounting from the Defendants of the revenues and profits realized by Defendant Vonn.

131.    Plaintiff is informed and believes and thereon alleges that the amount due to Plaintiff exceeds $500,000.

132.     Equity demands that Defendants be required to fully and intelligently account for all revenues and profits realized from the unlawful acts complained of herein.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Declaratory Judgment)
### (Plaintiff v. Defendants Magarik, Vonn and Valdberg)

133.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 132 of the Complaint.

134.     A ripe controversy exists as among the parties relative to Defendant Vonn and the Lighting Opportunity.

135.     Plaintiff seeks a judicial declaration that Defendant Vonn's business line is a corporate opportunity that originated with and belongs solely and exclusively to Plaintiff.

136.     Plaintiff further seeks a constructive trust over Defendant Vonn's assets, equitable reformation of all documents of title or ownership to properly reflect Plaintiff's right, title and interest in Defendant Vonn and the award of such other relief as may be necessary to restore Plaintiff's rights.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty)
### (Plaintiff v. Defendants Valdberg and Vigo)

137.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 136 of the Complaint.

138.     Defendants Valdberg and Vigo knowingly and actively aided and abetted in the breach by Defendant Magarik of his fiduciary obligations to Plaintiff.

139.     By reason of the aforesaid, Plaintiff has been harmed as heretofore alleged.

140.     Defendants Valdberg and Vigo's conduct was blatant, wanton, willful and intentional thus justifying the award of punitive or exemplary damages.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)
### (Plaintiff v. All Defendants)

141.    Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 140 of the Complaint.

142.    At all times relevant hereto, Plaintiff exercised reasonable efforts to maintain the confidentiality and secrecy of its product, pricing and customer details all of which constitute "trade secrets" under New York law.

143.    Kraus's pricing information, customer information, customer contact information, costs of goods sold, gross margin information, inventory system management controls and factory manufacturing partners are all proprietary and confidential information and trade secrets that are the legal property of Kraus.

144.    Defendants' actions and conduct constitute theft and misappropriation of Kraus's confidential/proprietary information and trade secrets.

145.    Magarik conspired with Vigo, Valdberg, and/or Challenger to carry out all of the above illegal and deceptive actions to the detriment of Kraus.

146.    Defendants conspired together to carry about the above common plan, design and scheme in a clandestine fashion to intentionally harm Kraus, and to advance Vonn and/or Vigo's business interests and finances at Kraus's expense and detriment.

147.    Defendants, either directly or through the actions of others, willfully and maliciously misappropriated Plaintiff's trade secrets in violation of New York common law or other applicable law.

148.    By reason of Defendants' misappropriation, Plaintiff has suffered significant monetary damages.

149.     As a direct and proximate result of Defendants' willful and malicious misappropriation of trade secrets, Plaintiff has sustained and, if Defendants are not enjoined, will continue to sustain, substantial damages.

150.     Additionally, Defendants have been unjustly enriched as a result of their misappropriation of Plaintiff's protected trade secrets.

151.     Because Defendants' acts of misappropriation were both willful and malicious, Plaintiff is an entitled to an award of punitive damages and attorney's fees.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(Tortious Interference With Contract)**
**(Plaintiff v. All Defendants)**

152.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 153 of the Complaint.

153.     As set forth more fully above:

(a)     Defendants Valdberg and Vigo tortiously interfered with the contractual relationship between Plaintiff and Defendant Magarik, if any, and caused Defendant Magarik to breach contractual obligations owed to Plaintiff arising from Defendant Magarik's employment in that (i) aside from his then-existing equity stake in Kraus, Defendant Magarik was also employed by Kraus and paid for services rendered; (ii) the employment relationship (even one at-will) constituted a "contract" under New York law; (iii) Kraus agreed to pay Magarik compensation in the approximate amount of $200,000 per year, paid as W-2 wages with the expectation that Magarik devote his full time and attention and his best efforts toward his employer, Kraus; (iv) Magarik agreed and received said compensation during the period between September 1, 2014 when Defendant Magarik registered the vonnlighting.com domain name and February 5, 2015 when Defendant Magarik officially incorporated Vonn as well as the time period between February

5, 2015 and September 10, 2015, Defendant Magarik's last day of employment; and (v) said Defendants, with knowledge of Defendant Magarik's contractual obligations as an employee, induced Magarik to breach said obligations as set forth in ¶¶ 71-82; (vi) effectively causing Magarik's to collect compensation without performing all or substantially all of the services agreed upon; and (vii) cause reasonably foreseeable harm including the W-2 compensation received by Magarik between the periods referenced in ¶153(a)(iv).

(b)     Defendants Valdberg and Vigo tortiously interfered with the contractual relationship between Kraus employee Racinos and Plaintiff by encouraging Racinos to terminate his employment with Plaintiff, disregard confidentiality obligations inherent in the Racinos Agreement.

(c)     Defendants Magarik and Vonn tortiously interfered with the contractual relationship between Kraus employee Challenger and Plaintiff by encouraging Challenger to terminate his employment with Plaintiff, hack Plaintiff's computer system and violate the CA.

154.    Defendants intentionally interfered with Kraus's existing business operations, employees, factory relationships and quality control staff by diverting Kraus employees and human capital from performing their scope of responsibilities for Kraus.

155.    Defendants' actions and conduct were illegal, were done with intent and actual malice, and were without legal basis or justification.

156.    The above actions resulted in an intentional interference with Plaintiff's supply chain, sales and net profits, contractual agreements, diversion and misappropriation of Plaintiff's employees, damage to Plaintiff's business reputation and customer relationships, significant disruption to Plaintiff's overall business operations, lost sales and profits and lost monies used to advance Defendants' businesses rather than Plaintiff's.

157. Defendants' conduct was purposeful and non-privileged.

158. By reason of the Defendants' unlawful acts, Plaintiff has been harmed as heretofore alleged and, if Defendants are not enjoined, will continue to be harmed.

159. As a direct and proximate result of Defendants' willful and malicious interference, Plaintiff has sustained and, if Defendants are not enjoined, will continue to sustain, substantial damages.

160. Because Defendants' acts of interference were both willful and malicious, Plaintiff is an entitled to an award of punitive damages and attorney's fees.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Unfair Competition)
### (Plaintiff v. Defendant Vigo)

161. Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 162 of the Complaint.

162. Defendant Vigo unlawfully misappropriated Plaintiff's property rights to its commercial advantage in order to further its infringing activity and to obtain an unfair competitive advantage over Plaintiff in the marketplace.

163. By reason of Defendant's unfair competition, Plaintiff has suffered significant monetary damages.

164. As a direct and proximate result of Defendant's unfair competition, Plaintiff has sustained and, if Defendant is not enjoined, will continue to sustain, substantial damages.

165. Additionally, Defendant has been unjustly enriched as a result of its acts of unfair competition.

166. Because Defendant's acts of unfair competition were both willful and malicious, Plaintiff is an entitled to an award of punitive damages and attorney's fees.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Breach of Contract)
### (Plaintiff v. Defendant Magarik)

167.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 168 of the Complaint.

168.     Defendant Magarik breached his contractual obligations to Plaintiff, drawing W-2 compensation of approximately $200,000 per year pursuant to an employer-employee relationship between Plaintiff and Defendant Magarik (described more fully in ¶153(a), supra) while spending all or substantially all of his time in the pursuit of the Lighting Opportunity and the business of Vonn.

169.     An employment relationship existed between Plaintiff and Defendant Magarik with mutual obligations to work (on Defendant Magarik's part) and pay for work (on Plaintiff's part).

170.     Plaintiff performed its obligations by paying Defendant Magarik.

171.     Defendant Magarik materially breached his obligations by, *inter alia*, (i) not performing work to further Plaintiff's business and economic interests; (ii) devoting a substantial portion of this time to the affairs of Vigo and/or Vonn; and (iii) engaging in conduct detrimental to Plaintiff's business and economic interests during the period set forth in ¶154(a)(iv).

172.     By reason of the aforesaid breaches, Plaintiff has been harmed as heretofore alleged and Plaintiff is entitled to recover, *inter alia*,  damages equal to compensation paid for services that were never rendered.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### (Common Law Fraud)
### (Plaintiff v. Defendant Magarik)

173.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 171 of the Complaint.

174.    In connection with the unlawful usurpation of the Lighting Opportunity, Defendant Magarik made overt and material fraudulent statements in regard to the Lighting Opportunity and concealed material information regarding Lighting Opportunity as part of an effort to lull Plaintiff into inaction and further the misappropriation of the opportunity for himself.

175.    The overt and material fraudulent statements were made by Defendant Magarik to Russell Levi and Michael Rukhlin between March 26, 2014 through approximately May 5, 2014 and consisted of words and statements designed to discourage Plaintiff from pursuing the Lighting Opportunity.

176.    The concealment of material information regarding the Lighting Opportunity occurred on or after May 5, 2014 and continued through Vonn's launch in approximately Q2 2015 (the precise date of which is unknown to Plaintiffs but constitutes information Defendant Magarik's possession) and consisted of (i) evaluation of the Lighting Opportunity; (ii) information gathering from Kraus contacts like Kearns and Nicholas J. Fox ("Fox"), the Co-Founder and Chief Technology Officer of eImprovement, LLC, which occurred on or about February 18, 2015; (iii) the hiring of Kearns and Fox to pursue the Lighting Opportunity and such other acts as may be established in discovery.

177.    Defendant's statements and omissions were material and actually designed to deceive and/or cause action and, in some cases, inaction on the part of the Plaintiff.

178.    Plaintiff detrimentally relied on Defendant's statements, actions and/or active concealment of material information in connection with their decision-making.

179.    As a direct and proximate cause of Defendant's fraud, Plaintiff has been harmed as heretofore alleged.

180.     Defendant's conduct was intentional, willful and malicious, thereby justifying the award of punitive and/or exemplary damages.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
**(Aiding and Abetting - Conspiracy to Common Law Fraud and Other Torts)**
**(Plaintiff v. Defendants Vonn, Vigo and Valdberg)**

181.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 177 of the Complaint.

182.     As set forth above, Defendants Vonn, Vigo and Valdberg conspired with, aided and abetted Defendant Magarik's unlawful and tortious conduct including, without limitation, his fraudulent statements, active concealment, conversion, unfair competition and misappropriation of trade secrets.

183.     As a direct and proximate cause of Defendants' wrongful acts , Plaintiff has been harmed as heretofore alleged.

184.     Defendants' conduct was intentional, willful and malicious, thereby justifying the award of punitive and/or exemplary damages.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
**(Unjust Enrichment)**
**(Plaintiff v. All Defendants)**

185.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 181 of the Complaint.

186.     As set forth above, Defendants have been unjustly enriched at the expense and to the detriment of Plaintiff.

187.     It would be fundamentally inequitable to permit Defendants to retain the benefits of their wrongdoing.

188.     Defendants should be required to disgorge all moneys, profits and gains which they have obtained or which they may in the future obtain as a result of the unlawful acts complained of herein.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
**(Breach of Contract)**
**(Plaintiff v. Defendant Challenger)**

189.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 185 of the Complaint.

190.     By reason of the aforesaid, Defendant Challenger breached Sections 1, 2, 3 and 4 of the CA.

191.     As a direct and proximate cause of the breach, Plaintiff has suffered damages and harm as heretofore alleged.

192.     Plaintiff has furthered suffered and continues to suffer the threat of irreparable harm which cannot be adequately addressed by remedies at law.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
**( Breach of Fiduciary Duty)**
**(Plaintiff v. Defendant Challenger)**

193.     Plaintiff repeats and incorporates by reference, as if fully stated herein, its allegations in paragraphs 1 through 189 of the Complaint.

194.     In addition to violating the CFAA, Defendant Challenger's unlawful and remote access of Plaintiff's protected computer system for an improper purpose occurred while he was still an employee of Plaintiff and thus constitutes a breach of his fiduciary obligations.

195.     Furthermore, Plaintiff believes and therefore avers that Defendant Challenger engaged in such other unlawful and actionable pre-departure conduct as may be established during discovery.

196.     As a direct and proximate cause of the breach, Plaintiff has suffered damages and harm as heretofore alleged.

197.     Defendant's conduct was willful, wanton and outrageous thereby justifying the imposition of punitive damages.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices)
### (Plaintiff v. All Defendants Except Vonn)

198.     [Dismissed by Order dated May 12, 2020]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against Defendants:

(a)     Damages in an amount to be determined at trial in this matter;

(b)     Punitive and exemplary damages in an amount to be determined at trial in this matter;

(c)     Interest, costs, attorney's and expert fees;

(d)     Equitable relief in the form of a the imposition of an injunction, constructive trust, accounting and a disgorgement of profits and other benefits received by reason of unlawful conduct;

(e)     Attorney's fees and costs of litigation; and

(f)     Awarding such other relief to Plaintiff as this Court deems appropriate, just, and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all triable issues contained in the Complaint

Date:   New York, New York                    Respectfully Submitted,
        May 21, 2020

                                              FOX ROTHSCHILD, LLP

                                              By: _____
                                                  Ely Goldin, Esq.
                                                  FOX ROTHSCHILD LLP
                                                  101 Park Avenue, Suite 1700
                                                  New York, NY 10017
                                                  Tel: (212) 878-7900
                                                  Fax: (212) 692-0940

                                                  *Attorneys for Plaintiff Kraus USA, Inc.*